412 P.2d 726

**The STATE of Arizona, Appellee,**

v.

**Henry TAYLOR and Mitchell Darby, Appellants.**

**No. 2 CA–CR 20.**

Court of Appeals of Arizona.

March 30, 1966.

Rehearing Denied April 12, 1966.

Darrell F. Smith, Atty. Gen., Norman E. Green, County Atty., Pima County, Carl Waag, Deputy County Atty., Tucson, for appellee.

Royal & Carlson, by H. Wesley Carlson, Tucson, for appellant Henry Taylor.

Manuel H. Garcia, Tucson, for appellant Mitchell Darby.

MOLLOY, Judge.

Being concerned about the soundness of our opinion previously released in this appeal, we granted rehearing to examine particularly the question of whether the decisions of the United States Supreme Court subsequent to Mapp v. Ohio, 367 U.S. 643, 81 Ct. 1684, 6 L.Ed.2d 1081 (1961), have mandated a single standard insofar as searches and seizures are concerned which standard is equally applicable to both federal and state courts without distinction. A re-evaluation of recent Supreme Court decisions convinces us that while the constitutional standard remains the same, as applied to both federal and state authorities, nevertheless, there is an area of discretion left in the states in determining the procedural requirements necessary for a valid search to be made. Further study, however, convinces us that our previous opinion needs clarification as to its basis in the pronouncements of the Supreme Court of the United States.

In our previously released opinion, 2 Ariz. App. 314, 408 P.2d 418, we stated:

"Basic constitutional rights should not depend upon the technicality of when an arrest is made. We hold that the circumstances presented to the trial court were such that the court was justified in finding that the search, made at 2:30 a. m., and the seizure, made either at 2:30 a. m. or 4:30 a. m., were reasonable. We do not believe that the trial court was mandated under the facts of this case to find that the conduct of these officers falls within the category of ' * * * rude invasions of privacy * * *' (81 Sup.Ct.1694), which were condemned in Mapp."

No citation of authority was given for the foregoing assertion. The statement, if it is to stand, merits authoritative support.

This court appreciates that the Supreme Court of the United States on at least one occasion has suggested that a lawful arrest is a sine qua non of a lawful search without a warrant. Such a statement is found in Ker v. State of California, 374 U.S. 23, 34, 83 S.Ct. 1623, 1630, 10 L.Ed.2d 726 (1963):

"The evidence at issue, in order to be admissible, must be the product of a search incident to a lawful arrest, since the officers had no search warrant." 374 U.S. 23, 34, 83 S.Ct. 1623, 1630 (1963)

However, the Ker decision was in reference to a dwelling, and not a motor vehicle. The area of law with which we are involved is one in which the court is weighing the undesirability of invasions of privacy against the desirability of disclosure of truth in courts of law. It is perhaps not inappropriate therefore to consider that

there may be a distinction between the invasion of privacy which takes place when a dwelling is searched as opposed to that involved in the search of a motor vehicle on the public highways.

In Carroll v. United States, 267 U.S. 132, 158, 45 S.Ct. 280, 287, 69 L.Ed. 543, the United States Supreme Court said:

"The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." 45 S.Ct. at 287.

While the extension of the rule of Carroll to searches not involving a violation of the National Prohibition Act was questioned in the decision of United States v. Di Re, 332 U.S. 581, 584, 68 S.Ct. 222, 224, 92 L.Ed. 210 (1948), we do not consider Di Re to be authoritative as to the problem at hand. Di Re did not involve the search of a motor vehicle,[1] but rather the search of the person of the accused, which search revealed the counterfeit gasoline ration coupons with which the defendant was charged of knowingly possessing.

In the case before us, we have both the search of the person and of a motor vehicle. But, as we view the situation, the search of the person is unimportant, because nothing was disclosed in this search which was admitted in evidence against either of the defendants nor was anything revealed by a search of the person which led to any evidence which incriminated the defendants as to the charge before us now. All of the incriminating evidence against the defendants which was obtained by search and seizure was in open display in the rear seat of this motor vehicle, with the exception of one used battery, which was found in the trunk of the automobile.

Decisions subsequent to Carroll have reaffirmed its doctrine. Husty v. United States of America, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629 (1931); and Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). The latest pronouncement from our United States Supreme Court in this area, though it distinguishes Carroll, does not abrogate it. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964).

Though in Di Re it was suggested that the correctness of the Carroll decision rested upon a special provision in the National Prohibition Act, referred to as the Stanley Amendment, this court has been unable to accept this analysis as correct. It is true that in Carroll there was a tracing of the legislative history of the Stanley Amendment (267 U.S. 132, 144–145, 45 S.Ct. 280, 282 (1925)). But, the Stanley Amendment falls far short of specifically authorizing the search of motor vehicles without warrant. As finally adopted, the Stanley Amendment is a legislative enactment which creates a new crime, pertaining to the searching of " * * * any private dwelling without a warrant directing such search." As originally proposed in the Senate Bill, the enactment would have made it a crime to search " * * * the property or premises of any person without previously securing a search warrant."

And, though the court in Carroll concluded that Congress had intended to make a distinction between the necessity for a search warrant in the searching of private dwellings as opposed to that of searching automobiles, the court met head-on the constitutional problem presented. (267 U.S. 132, 147, 45 S.Ct. 280, 283 (1925)). If the conduct in question be a violation of the Fourth Amendment, then it would seem to make no substantial difference that Congress authorized the conduct in question. The essence of the doctrine of judicial review, which was made one of the cornerstones of the fundamental law of this country by Chief Justice John Marshall in

---

[1]. Justice Jackson in his opinion states: "In the case before us there appears to have been no search of the car itself."

332 U.S. 581, 586, 68 S.Ct. 222, 224 (1948).

Marbury v. Madison, 1 Cranch 137, 2 L. Ed. 60 (1803), does not countenance a violation of the Constitution by act of Congress.

In meeting the problem head-on, Carroll quotes with approval from the case of Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 528, 29 L.Ed. 746 (1886), a part of which quotation seems to be significant to the problem of whether the Carroll decision is to be limited merely to contraband under the National Prohibition Act, or whether it has pertinency to a case such as now before this court, in which stolen goods are involved:

" 'The search for and seizure of *stolen* or forfeited goods, or goods liable to duties and concealed to avoid the payment thereof, are totally different things from a search for and seizure of a man's private books and papers for the purpose of obtaining information therein contained, or of using them as evidence against him. The two things differ *toto coelo*. In the one case, the government is entitled to the possession of the property; in the other it is not. *The seizure of stolen goods is authorized by the common law;* and the seizure of goods forfeited for a breach of the revenue laws, or concealed to avoid the duties payable on them, has been authorized by English statutes for at least two centuries past; * * *.' " (Emphasis added.) 267 U.S. 132, 45 S.Ct. 280, 284 (1925.)

While Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629 (1931), also involved a violation of the National Prohibition Act, and therefore might be justified to some extent by the Stanley Amendment, this is not the case in Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302 (1949), as so distinctly pointed out in the dissenting opinion of Justice Jackson (69 S.Ct. at 1314).

In Brinegar, the majority opinion, in holding that there is a difference in the quantum of proof necessary to prove guilt and that needed to justify a search, placed some emphasis upon the fact that a moving vehicle was involved:

"However, if those standards [proof beyond a reasonable doubt] were to be made applicable in determining probable cause for an arrest or for search and seizure, *more especially in cases such as this involving moving vehicles used in the commission of crime,* few indeed would be the situations in which an officer, charged with protecting the public interest by enforcing the law, could take effective action toward that end." (Emphasis added) Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 1310 (1949)

Though Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), held that the search of a vehicle could not be justified by an arrest because the search of the vehicle was " * * * too remote in time or place to have been made as incidental to the arrest," nevertheless, the court indicated that there is a substantial difference between the search of a motor vehicle and the search of a dwelling, founded in practicality:

"Common sense dictates, of course, that questions involving searches of motorcars or other things readily moved cannot be treated as identical to questions arising out of searches of fixed structures like houses. For this reason, what may be an unreasonable search of a house may be reasonable in the case of a motorcar. See Carroll v. United States, supra, 267 U.S., at 153, 45 S.Ct. at 285, 69 L.Ed. 543. But even in the case of motorcars, the test still is *was the search unreasonable.* Therefore we must inquire whether the facts of this case are such as to fall within any of the exceptions to the constitutional rule that a search warrant must be had before a search may be made." (Emphasis added) 376 U.S. 364, 84 S.Ct. 881, 883 (1964)

We believe that Preston leaves the problem as it is phrased in the Fourth Amendment, that is, to a determination of whether under all the circumstances, and considering

the feasibility of securing a search warrant, the search in question was "unreasonable."

In Ker v. State of California, 374 U.S. 23, 37, 83 S.Ct. 1623, 1630 (1963), our Supreme court took care to leave the door open for the state's " * * * developing workable rules governing arrest, searches and seizures to meet 'the practical demands of effective criminal investigation and law enforcement.' " (83 S.Ct. at 1630). If Congress may through a legislative vehicle, such as the National Prohibition Act, determine certain standards, which permit the search of a motor vehicle without a search warrant, it would seem that under the Ker decision, the State of Arizona may do likewise.

■ We realize that, as in Brinegar, we are walking the " * * * troublesome line * * * between mere suspicion and probable cause," (69 S.Ct. at 1311), but we believe that under the particular situation and taking into account all of the circumstances of this particular search, the officers did not transgress upon the constitutional prohibition against "unreasonable searches and seizures." If our state adopts standards which permit the search of a motor vehicle under certain circumstances, without an arrest, and without a search warrant, it will not be alone. See decisions annotated at 89 A.L.R.2d, p. 734.

■ The appellants have relied heavily, in this appeal, upon the decision of Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), because it is strikingly similar in facts, even to the extent that the accused in that case were held for the same period of time, two hours, after the finding of stolen merchandise in their motor vehicle, without any formal arrest occurring. It is almost a "spotted dog" case. However, we believe there is at least one distinguishing feature in the facts, and this pertains to the initial stopping of the motor vehicles involved in the respective cases. In Henry, the motor vehicle was stopped for no reason other than the conduct on the part of the occupants of a motor vehicle which was considered to be suspicious by arresting officers. In this case the initial stopping of the motor vehicle was for a traffic violation. In one sense this might seem to be of no great moment. We have pointed out in our previous opinion in this case that a traffic violation in and of itself does not give authority to search the motor vehicle for suspected violations of other laws. However, when we consider, again, the basic purpose of this law requiring the suppression of evidence, this difference in facts takes on more substance. The reason for this rule of exclusion which has been mandated under judicial interpretations of our Constitution is to discourage law enforcement officers from unreasonably imposing their authority upon the private individual and from unreasonably invading his privacy. The purpose of the law is certainly not to discourage an enforcement of our traffic laws. The stopping of a motor vehicle, as was pointed out in the Henry decision, is in and of itself an interference with the liberty of the individual. In Henry, this stopping was regarded, as a matter of law, as constituting an arrest. If the original stopping in Henry was highhanded, this element is missing from the instant case. There are other differences. In this case, the stolen goods were halted when being transported from where they were originally feloniously taken. Not so in Henry. Moreover, here we have elements of consent involved, which, if they were present in Henry, were not commented upon by the court. Singularly, these differences might not be decisive, but taken as a whole and together with other factual differences, they justify a different result than Henry. We are also not unmindful that the Supreme Court of the United States has indicated that the "highwater" [2] mark of this law limiting what will be considered probable cause for a search was reached in Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), thus suggesting that we may be in

2. Quote from Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 170 (1959).

**162**

an ebbing tide more compatible to reasonable law enforcement.

In a motion for rehearing, one of the defendant's counsel has suggested that this court was wrong " * * * in off-handedly rebuking defense counsel for attempting to uphold the Constitutional rights of appellant." Reference is made to the closing paragraphs of the opinion originally released in which the court made mention of the vast amount of litigation being generated throughout this country by the nebulous law pertaining to searches and seizures. In reflection, we acknowledge that these words were not necessary to the opinion and should not have been included therein. However, there was no intent upon the part of this court to in any way rebuke defense counsel for bringing this matter up on appeal nor was there any intent to discourage defense counsel from proceeding to higher courts with the problems with which we have been attempting to cope.

In a recent opinion of this court, State of Arizona v. Superior Court, 2 Ariz. App. 458, 409 P.2d 742 (1966), we had occasion to call attention to Canon 5 of the Canons of Professional Ethics of the American Bar Association, pointing out that this Canon requires defense counsel to undertake the defense of persons accused of crime " * * * regardless of his personal opinion as to the guilt of the accused * * * " and " * * * to present every defense that the law of the land permits * * * ." As we have indicated in our opinion, the mixed legal and factual questions presented in this appeal are close to the borderline between the constitutionally permissible and the constitutionally prohibited. This comment is as applicable to the problems presented in this appeal involving the admission of the confessions of the co-defendants and to the failure to provide counsel at public expense at an earlier stage of these proceedings as it is to the problems involving search and seizure. The recent, well-reasoned decision of People v. Aranda, 47 Cal. Rptr. 353, 407 P.2d 265 (Cal.1965), which was rendered prior to the release of our original opinion in this case, but which was not called to our attention until after our decision had been released, makes very apparent the closeness of the legal question of whether reversible error was committed in the admission of the confessions in this action. In view of these circumstances, it seems apparent that defense counsel would be duty bound to seek review of our decision by higher judicial authority.

Our previous decision to affirm the decision of the lower court is reaffirmed.

KRUCKER, C. J., and HATHAWAY, J., concurring.