466 P.2d 405

The STATE of Arizona, Appellee,

v.

Donald F. REYNOLDS, Appellant.

No. 1 CA–CR 196.

Court of Appeals of Arizona,
Division 1,
Department A.

March 10, 1970.

Gary K. Nelson, Atty. Gen., by Carl Waag and William P. Dixon, Asst. Attys. Gen., Phoenix, for appellee.

Otto H. Linsenmeyer and Frank E. Dickey, Jr., by Frank E. Dickey, Jr., Phoenix, for appellant.

CAMERON, Judge.

This is an appeal from a verdict and judgment of guilt to the crime of grand theft, a felony (A.R.S. § 13–661 and § 13–663, as amended), from the order denying defendant's motion for new trial, and from a sentence of not less than six or more than eight years in the Arizona State Prison.

We are called upon to determine:

1. Whether a second trial, after the court had granted the State's motion for mistrial in a preceding trial, amounted to double or former jeopardy.

2. Whether the motion to suppress was improperly denied.

3. Whether the court committed error in refusing to instruct the jury on defendant's theory of the case.

## DOUBLE JEOPARDY

At the first trial, the defendant was held in contempt of court for misconduct which occurred in the courtroom during a hearing held out of the presence of the jury. The fact of the contempt was reported in a newspaper of general circulation in Phoenix, Arizona, as well as on the local radio and television stations. Defendant's attorney called this matter to the attention of

the trial court and moved for a mistrial. The attorney asked the court:

"* * * I would suggest that if it comes to that, that they [the jurors] should be questioned on an individual basis so that, each one of them, if they did hear or read something about it, that they should be kept one from the other, that they could be separated from the whole jury panel. * * *"

The court, over the objections of the attorney for the State, proceeded to interrogate all of the jurors and alternates, questioning them separately. The juror who had clipped an article from the newspaper relating to the contempt was questioned first:

"Q Have you in any way violated those instructions, either knowingly or beyond any circumstances?

"A I am afraid so; yes.

"Q In what way?

"A I was getting a haircut on my lunch hour yesterday and I was reading a newspaper and I observed an article when I was only half-way through about this trial—

"Q Did you read that article?

"A Yes, sir; I did.

"Q As a result of your reading that article, did you form any opinion concerning the defendant?

"A No, sir; not really.

&ast; &ast; &ast; &ast; &ast; &ast;

"The Court: Do counsel wish to ask any additional questions?

&ast; &ast; &ast; &ast; &ast; &ast;

"Mr. Dickey: The only request I would, would be to inquire as to whether he, he has discussed this with any other juror?

"A No, sir; I haven't."

Later this same juror was called back after the other jurors were questioned and was asked:

"The Court: * * * I believe you related to us previously that you had seen an article in the paper while you were getting a haircut yesterday noon.

"A Yes, sir.

"Q What action did you take in regard to that article, if any?

"A I showed it to three other jurors, sir.

&ast; &ast; &ast; &ast; &ast; &ast;

"Q Didn't we ask you previously about this when you were in here the first time?

"A Yes, sir; you did.

"Q I didn't recall you relating it at that time.

"A No, sir; I didn't—I was trying to protect them, and I was in hope of not causing a mistrial, and it was foolish for me not to mention it."

This one juror was excused by the court, an alternate was substituted for the excused juror, and the defendant withdrew his motion for a mistrial. The County Attorney then moved for a mistrial, on behalf of the State, which was granted over the objections of the defendant.

Defendant timely moved to dismiss based upon former jeopardy which motion was denied. The State, while admitting that if the motion for mistrial was improperly granted the conviction cannot stand on the basis of double jeopardy, State v. Burruell, 98 Ariz. 37, 401 P.2d 733 (1965), contends that the trial judge did not abuse his discretion in granting the motion of the State for a mistrial.

The United States Constitution states:

"* * * [N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb. * * *." U.S.Const., Amend. V.

And the Arizona Constitution reads:

"No person shall * * * be twice put in jeopardy for the same offense." Ariz. Const. Art. 2, § 10, A.R.S.

Our Supreme Court has stated as to jeopardy:

"* * * Jeopardy attaches after the proceedings in a criminal trial have com-

menced, and once attached, unless removed for some legal reason, the one in jeopardy cannot be again tried for the same offense. (citations omitted) The prime issue thus becomes whether the reason given by the judge for declaring the mistrial was such a legal reason." State v. Puckett, 92 Ariz. 407, 409, 377 P.2d 779 (1963).

 In a court of law, where we are dealing with a multitude of human factors, perfection is unattainable and neither the defendant nor the State is entitled to a perfect trial. Insofar as possible, however, both the State and the defendant are entitled to a fair and impartial jury. When events occur that cast an irrevocable cloud over the jury's fairness and impartiality, it is far better to grant the motion for mistrial and start over again. This action should not be taken lightly, but when the interest of justice so demands, it should nevertheless be done.

 We have reviewed the transcript of the questioning in this case and the conclusion is inescapable that the juror in question had shown the news article to other jurors who were still on the jury panel. The court, after hearing the jurors testify, was in a better position to judge the effect of not only the article but the questioning as well. Under the circumstances we believe the trial court had a "legal reason" for granting the motion.

## SHOULD THE MOTION TO SUPPRESS HAVE BEEN GRANTED?

Counsel timely moved to suppress the fruits of the search of defendant's automobile based upon the insufficiency of the search warrant. Appellant attacks the evidence on two grounds: (1) the warrant was not in itself a valid warrant, and (2) that it was not a valid arrest and therefore anything found in the arrest would not be admissible.

Prior to the arrest, the officers went to the East Precinct Number 2 Justice Court and obtained a search warrant. The affidavit of the officer states in part as follows:

"1. That affiant is a member of the *Scottsdale Police Department,* Maricopa County, Arizona.

"2. That on or about the *8* day of *May, 1967,* in the city of *Scottsdale,* County of Maricopa, State of Arizona, the crime of *Burglary* was committed by *Donald Franklin Reynolds* in the manner following, to-wit: *Entered an apartment (possibly with a key) owned by Mike L. Busch and located at 6721 East Mc-Dowell Road, #303 C, Scottsdale.*

"3. That affiant has, and there is, just, probable and reasonable cause to believe, and he does believe, that there are now in the possession of *Donald Franklin Reynolds,* and in and upon the premises and building known and designated as *1821 East Almeria* in the said County of Maricopa, State of Arizona, including all rooms and buildings used in connection with said premises and buildings, and adjoining the same, and in a motor vehicle or trailer described as *1965 Ford Mustang, Arizona License JAT 958, Goldish green in color* certain articles, items, and property;

\* \* \* \* \* \*

"5. That the following facts establish the existence of grounds for the issuance of a search warrant \* \* \* and further, establish probable cause for believing that said grounds exists; *A confidential informant observed suspect's vehicle leaving the scene of burglary and described suspect.* Said information having been obtained by the informants on or about *May 9, 1967* or within the past *2* days."

Based upon this affidavit a search warrant was issued.

Armed with this search warrant the police went to the defendant's home at 1821 East Amelia (not Almeria as stated in the affidavit and warrant) and were admitted to the premises by the defendant's wife. Shortly after this, defendant was observed by the officers passing his home. The offi-

cers left the home and next observed defendant in his automobile in an alley behind his home. The officers drove their car up the alley towards defendant's car, the police car being stopped in such a position as to prevent defendant's car from moving forward. The officers got out of their police car and approached defendant and started talking to him. When the officers got close enough to see through the windows and to the floor, they observed some objects including a camera. The defendant was requested to drive to the front of the house. The officers then questioned the defendant about the items in the car.

The officer contended that defendant claimed to have owned the items and that previously two men had given the items to him although this is disputed. The officers took the items into custody with the defendant's consent. None of the items which were taken at this time and which were introduced into evidence during the trial for grand theft, were the same items that were mentioned in the search warrant itself. The offense for which he was convicted occurred the same day as the arrest.

We have read the affidavit and we believe that it properly supports the action of the magistrate in issuing the search warrant. See Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and State v. Franklin, 10₁ Ariz. 89, 416 P.2d 413 (1966). The search warrant authorized a search of the premises designated as 1821 East Almeria and although this was incorrect, the defendant living at 1821 East Amelia, we do not believe this error invalidates the warrant. The warrant also authorized the search of a motor vehicle described as a 1965 Ford Mustang License Number JAT 958. This was done. In addition, we believe the officers had probable cause to believe that appellant had the fruits of a burglary with him and therefore had justification to make an arrest.

The Fourth Amendment provision against unreasonable searches and seizures protects citizens from impositions by unduly suspicious policemen. It is not intended to and does not have, when properly interpreted, the effect of making it difficult or impossible to arrest persons guilty of crime. The test of the sufficiency of a search warrant is not whether the items found in the search support the affidavit made when applying for the warrant, but whether at the time the affidavit is presented to the magistrate, it contains sufficient information (together with other facts) from which the magistrate could find probable cause to issue the warrant.

Here the officers had gone to a magistrate, had obtained a search warrant, and were proceeding properly to make that search and a possible arrest. It is immaterial that the items listed in the search warrant were not found, these being the fruits of another burglary, and we find no error in the trial court's failure to suppress the evidence obtained from the automobile which proved to be the fruits of a second burglary. See State v. Taylor, 3 Ariz.App. 157, 412 P.2d 726 (1966).

Having found the search warrant valid we do not consider the question of the search as an incident to the arrest. But see State v. Quintana, 92 Ariz. 267, 376 P.2d 130 (1962), State v. Taylor, 3 Ariz.App. 157, 412 P.2d 726 (1966), State v. Pine, 8 Ariz. App. 430, 446 P.2d 940 (1968), Scott v. State, 7 Md.App. 505, 256 A.2d 384 (1969), Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

## INSTRUCTIONS

Defendant was charged with theft (A.R.S. § 13–661) and not with receiving stolen property (A.R.S. § 13–621). At the trial the defendant's mother testified as follows:

"Q Did anyone else come up to the house during the period of time that you and Mr. Reynolds were there?

"A Yes. A couple of fellows that Dan knew.

"Q And do you know who these people were?

"A I only know the one. I don't know the other one. I never saw him before. I saw the one several times.

"Q And do you know the name of this one person?

"A Well, they call him Doug. I don't know his last name. I have heard it, but I don't remember it. Doug.

"Q Does the name Doug Barr sound familiar?

"A That sounds like it, yes.

"Q And what happened when these two men pulled up?

"A Well, I heard him ask Dan if he would keep some things for him, and he said 'Sure. Put them in the car.' And they put some things in the car."

On direct examination the wife of the defendant stated:

"Q Did your husband indicate the names of the persons who left the items in his car?

"A Yes, he did.

"Q And what names did he tell them?

"A Well, I only remember one of the names, and that was Doug Barr, Douglas Barr.

"Q Are you acquainted with Doug Barr, have you seen him before?

"A Yes, I have seen him before."

Defendant requested an instruction which would distinguish receiving stolen property from grand theft and directing that if the jury found that defendant was only guilty of receiving stolen property they must acquit him of the charge of grand theft

█ In a criminal case as well as a civil case, the parties are entitled to an instruction on their theory of the case if sustained by the evidence. Rule 272, Rules of Criminal Procedure, 17 A.R.S., reads as follows:

"The law of evidence and the law relating to instructions to the jury in civil actions shall apply to criminal actions except as otherwise provided."

And our Supreme Court has stated:

"* * * The court erred by refusing to give the requested instruction. The defendant's requested instructions which go to the gist of the theory of his defense and are supported by the competent evidence must be given. Walker v. State of Arizona, 52 Ariz. 480, 83 P.2d 994; Rule 272, Rules of Criminal Procedure, 17 A.R.S.; Trauscht v. Lamb, 77 Ariz. 276, 270 P.2d 1071. * * *." State v. Randolph, 99 Ariz. 253, 256, 408 P.2d 397 (1965).

█ In the instant case we believe that the trial court erred in not instructing the jury, at defendant's request, concerning receiving stolen property. The two offenses being separate offenses and mutually exclusive, Leon v. State, 21 Ariz. 418, 189 P. 433, 9 A.L.R. 1393 (1920), Reser v. State, 27 Ariz. 43, 229 P. 936 (1924), and defendant not being charged with receiving stolen property, if the jury found that he did receive the items rather than steal them he would have been entitled to a verdict of acquittal.

## OTHER QUESTIONS

Other alleged errors are asserted by defendant on appeal which we do not believe necessary to rule upon at this time, they being of the nature that if they were error they are not likely to be repeated at a new trial.

The matter is reversed and remanded to the trial court with directions to grant the defendant's motion for new trial and such other and further proceedings not inconsistent with this opinion.

DONOFRIO, P. J., and STEVENS, J., concur.