984 P.2d 1161

**Asa Edward JONES, Petitioner,**

v.

**The Honorable William T. KIGER, Judge of the Superior Court of the State of Arizona, in and for the County of Yavapai, Respondent Judge,**

**State of Arizona, Real Party in Interest.**

**No. 1CA–SA 99–0070.**

Court of Appeals of Arizona, Division 1, Department E.

June 10, 1999.

---

Law Offices of William B. Fortner by William B. Fortner, Prescott, Attorney, for Petitioner.

Charles R. Hastings, Yavapai County Attorney by Dante M. Alegre, Deputy County Attorney, Prescott, Attorneys for Respondent.

## OPINION

KLEINSCHMIDT, Judge.

¶ 1 This case presents the question whether prosecution of the Defendant is

barred by the constitutional prohibition against placing an accused twice in jeopardy. The denial of a motion to dismiss that is based on a claim of double jeopardy is properly reviewed by special action. *See Miller v. Superior Court*, 189 Ariz. 127, 129, 938 P.2d 1128, 1130 (App.), *rev. denied, Miller v. Wilkinson–Mar,* 190 Ariz. 213, 946 P.2d 464 (1997).

¶2   The case arose as follows. An informant told the Prescott Area Narcotics Task Force that the Defendant and a co-defendant had drugs at their house. A search of the house by police uncovered methamphetamine and marijuana. Both the Defendant and the co-defendant contended that the Defendant's ex-wife or her boyfriend had planted the drugs and then informed the police that there were drugs in the home. The Defendant and his co-defendant were charged with numerous drug offenses, and they were tried together to a jury.

¶3   At trial, during the cross-examination of the manager of the task force, the Defendant's attorney asked the officer the identity of the informant. The State objected to that line of questioning because it did not plan to call the informant as a witness. The court sustained the objections, and the following ensued:

Q: [Defendant's attorney] Did the informant tell you that he expected you to know or to find a lot of crystal methamphetamine at the residence?

A: The informant reported what they had seen in the residence within the past 24 hours. And the amount that was seized was consistent with what the informant had told me.

¶4   The co-defendant objected to this question, asserting that the answer was prejudicial and antagonistic to her defense. She moved for a mistrial and in the alternative for a severance. The prosecutor, arguing that the testimony did not warrant a mistrial, asked the trial judge to strike the testimony and instruct the jury not to consider it. The court granted the severance.

¶5   The following day, counsel for the Defendant, without conceding that the testimony was prejudicial to his case, asked the judge to dismiss with prejudice if he believed that fundamental error had occurred. This request was denied. Defense counsel then insisted that the hearsay testimony was not prejudicial to his case and requested that the trial continue. The prosecutor, realizing that double jeopardy might bar a retrial, did not want a mistrial. The judge stated that he had reviewed the transcript and found the hearsay of "the type that I would never ever allow [the officer] to testify to." He found that in "just watching the response of the jurors to that testimony, that ... they all changed their facial features and looked as it was, as I interpreted, had [sic] a significant impact on them." He believed that there was no way to tell the jury to disregard the testimony. The judge also believed that

if [the State] would not ask another question and not produce its witnesses, ... this jury would find [the Defendant] guilty based upon that statement that [the officer] produced, as far as the confidential reliable informant coming into the house, seeing the methamphetamine, a large quantity available for sale, within that time period. That was certainly contradictory to ... their defense.

The court then, *sua sponte*, granted a mistrial as to both defendants and set a new trial date. The Defendant's motion to dismiss was denied, and this special action followed.

¶6   The Double Jeopardy Clause of the United States Constitution states "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb...." U.S. Const. amend V. The analogous clause in the Arizona Constitution states that "No person shall ... be twice put in jeopardy for the same offense." Ariz. Const. art. 2, § 10. The policy behind the Double Jeopardy Clause

is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*United States v. Jorn,* 400 U.S. 470, 479, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality opinion) (quoting *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957)). The State may not request a mistrial for the purpose of having a more favorable opportunity to convict a defendant on retrial. *See United States v. Dinitz,* 424 U.S. 600, 611, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *Downum v. United States,* 372 U.S. 734, 736, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); *Gori v. United States,* 367 U.S. 364, 369, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961).

¶ 7 Jeopardy attaches once the jury is empaneled and sworn, and the proceedings commence. *State v. Riggins,* 111 Ariz. 281, 283, 528 P.2d 625, 627 (1974). Generally, once jeopardy attaches the defendant may not be subject to a second trial for the same offense. *See Arizona v. Washington,* 434 U.S. 497, 505, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); *Jorn,* 400 U.S. at 479, 91 S.Ct. 547. If a defendant moves for a mistrial, the retrial is generally not barred on double jeopardy grounds because the defendant is deemed to have consented to the retrial. *See Miller,* 189 Ariz. at 130, 938 P.2d at 1131.

¶ 8 When the court orders a mistrial *sua sponte* over the defendant's objection, the defendant may be retried without violating the Double Jeopardy Clause only if "taking all the circumstances into consideration, there is a *manifest necessity* for the act, or the ends of public justice would otherwise be defeated." *Arizona v. Washington,* 434 U.S. at 506 n. 18, 98 S.Ct. 824; *see State v. Marquez,* 113 Ariz. 540, 542, 558 P.2d 692, 694 (1976). Courts, for example, have found a manifest necessity to declare a mistrial when the jury could not agree on a verdict, when the trial judge became too ill to proceed, when jurors read a newspaper article that reflected that the court had held the defendant in contempt, when the prosecutor engaged in misconduct, and when a court martial was dismissed for reasons of military tactical necessity. *See McLaughlin v. Fahringer,* 150 Ariz. 274, 277, 723 P.2d 92, 95 (1986); *see also Arizona v. Washington,* 434 U.S. at 509, 98 S.Ct. 824.

¶ 9 The trial court is usually in the best position to determine whether manifest necessity requires a mistrial. *See Klinefelter v. Superior Court,* 108 Ariz. 494, 496, 502 P.2d 531, 533 (1972). Nonetheless, when considering a mistrial, the trial judge must recognize that the defendant has a significant interest in deciding whether to take the case from the jury and "retains primary control over the course to be followed in the event of such error." *See Dinitz,* 424 U.S. at 609, 96 S.Ct. 1075; *State v. Irving,* 559 S.W.2d 301, 310 (Mo.App.1977).

> He may believe that any error in admitting improper evidence can be cured by a motion to strike or a request for admonition, or can be refuted by impeachment of the witness or contrary defense evidence. Indeed, even when a palpably prejudicial error has been committed a defendant may have valid personal reasons to prefer going ahead with the trial rather than beginning the entire process anew, such as a desire to minimize the embarrassment, expense, and anxiety mentioned above. These considerations are peculiarly within the knowledge of the defendant, not the judge, and the latter must avoid depriving the defendant of his constitutionally protected freedom of choice in the name of a paternalistic concern for his welfare.

*Curry v. Superior Court,* 2 Cal.3d 707, 87 Cal.Rptr. 361, 470 P.2d 345, 351 (1970).

¶ 10 A thorough review of the record leads us to conclude that the trial judge abused his discretion. *See Klinefelter,* 108 Ariz. at 496, 502 P.2d at 533. While the question defense counsel asked the officer may seem reckless, and while the response was hearsay and on its face inculpatory, it is impossible to say on this record that the officer's answer to the question severely undermined the Defendant's case or prejudiced it at all. The trial judge appears to have ignored defense counsel's assertion that his case was not damaged without considering why that might be true. The officer was the first witness to testify and neither the trial judge, nor we, can know what other witnesses would have said. Could defense counsel have elicited from the officer that the informant was actually the Defendant's ex-

wife or her boyfriend? Could defense counsel have argued that the ex-wife or her boyfriend was the informant regardless of what the officer said on that subject? Could he have persuaded the jury that regardless of the informant's identity, what the informant told the officer was a lie? For all the record shows, the person in the best position to evaluate these possibilities was the Defendant's attorney, and he insisted that his case was not prejudiced by the testimony.

¶ 11 Moreover, the trial judge apparently failed to give sufficient deference to defense counsel's assessment of another facet of the case. While we do not have a complete record of everything that occurred before trial, it appears that the trial court had excluded one of the State's witnesses, a police officer, from testifying against the Defendant, apparently because the defense had not received proper notice that he would be called as a witness. Apparently, however, the trial judge was prepared to allow this witness to testify in the event a mistrial was declared and the case was retried. This testimony, according to the Defendant's attorney, would be "extremely damaging" to his case. Defense counsel wanted to continue with the trial, not only because he did not find the hearsay testimony prejudicial, but also because the State would then have a second opportunity to present potentially damaging testimony that it had been ·precluded from introducing in the first trial. This is just what cases like *Downum v. United States* forbid. 372 U.S. at 736, 83 S.Ct. 1033.

¶ 12 As an alternative to the drastic expedient of declaring a mistrial over the Defendant's objection, the trial judge could have taken the State's suggestion and admonished the jury not to consider the officer's answer. Courts routinely express confidence in this remedy. *See Blackburn v. State*, 31 Ariz. 427, 453, 254 P. 467, 476 (1927) ("We cannot any more assume that the jury disregarded [an] instruction than we could assume that it considered evidence which had been ordered stricken out.") (quoting *Gibson v. Territory*, 8 Ariz. 42, 45, 68 P. 540, 540 (1902)). As another alternative, the trial judge could have granted a new trial if subsequent devel-

opments demonstrated that defense counsel's judgment and tactics were so deficient that the Defendant had not received effective assistance of counsel.

¶ 13 The State cites *Gori*, 367 U.S. at 367, 81 S.Ct. 1523, for the proposition that the court may, without barring retrial, declare a mistrial over the defendant's objection when something happens that prejudices the defendant. In *Gori*, the prosecutor asked questions that the judge believed were about to lead to a disclosure to the jury that the defendant had prior convictions. *Id.* at 366, 81 S.Ct. 1523. Without the defendant's request or objection, the trial judge granted a mistrial. *Id.* The Supreme Court, in a five to four decision, held that the mistrial did not bar retrial because it was declared for the sole benefit of the defendant. *Id.* at 367, 81 S.Ct. 1523.

¶ 14 There are several reasons why we do not believe that *Gori* governs the case before us. One such reason is that in a subsequent Supreme Court case, *Jorn*, 400 U.S. at 470, 91 S.Ct. 547, the plurality revisited *Gori* and undercut its rationale. The Court stated, "we think that a limitation on the abuse-of-discretion principle based on an appellate court's assessment of which side benefited from the mistrial ruling does not adequately satisfy the policies underpinning the double jeopardy provision." *Id.* at 43, 68 P. 540. The manifest necessity doctrine instructs judges not to foreclose the defendant's option to continue a trial until "a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." *Id.* at 485, 91 S.Ct. 547. "[B]right-line rules based on either the source of the problem or the intended beneficiary of the ruling would only disserve the vital competing interests of the Government and the defendant." *Id.* at 486, 91 S.Ct. 547. The judge, in the end, must determine whether to abort the trial by considering the importance to the defendant of having the trial completed in front of a tribunal that he believes may be "favorably disposed to his fate." *Id.* The other reason *Gori* is not controlling is that in *Gori* the defendant nev-

er objected to the mistrial. *Gori*, 367 U.S. at 365, 81 S.Ct. 1523.

¶ 15   One case, *State v. Reynolds*, 11 Ariz. App. 532, 466 P.2d 405 (1970), might be interpreted to support the State's position. In *Reynolds* the trial court granted a mistrial over the defendant's objection after jurors admitted that they had read a newspaper article that reported that the defendant had been held in contempt of court for misbehavior that had occurred outside the presence of the jury. *Id.* at 534, 466 P.2d at 407. On appeal, the court said that a mistrial does not bar retrial when events occur that cast "an irrevocable cloud over the jury's fairness and impartiality." *Id.* at 535, 466 P.2d at 408. We question the holding in *Reynolds* because it does not consider the factor that the Supreme Court found so critical in *Jorn* the importance to the defendant of having the jury that has been impaneled decide the case. Nor does it discuss the weight that must be placed on the defendant's evaluation of the prejudice that has been injected into the case or any other reason the defendant may have for wanting to proceed despite the prejudicial incident. Moreover, unlike in this case, it is almost unimaginable that the information imparted to the jury in *Reynolds* could play out in any way that was not harmful to the defendant.

¶ 16   The trial judge ordered the mistrial without manifest necessity, and a retrial is barred. We grant relief and remand to the trial court with directions to dismiss this case with prejudice.

CONCURRING: WILLIAM F. GARBARINO, Presiding Judge, and EDWARD C. VOSS, Judge.