VÁSQUEZ, Judge,
dissenting:
¶ 31 As the majority points out, our supreme court has stated that when a trial court fails to make a “real effort to determine whether there were any feasible alternatives to declaring a mistrial,” there is no manifest necessity for a mistrial. McLaughlin v. Fahringer, 150 Ariz. 274, 277, 723 P.2d 92, 95 (1986). Relying on this principle, the majority reverses Woods’s convictions with prejudice, concluding the trial court did not consider the alternatives of polling the jury and giving a curative instruction. I respectfully dissent because I disagree that the court in this case failed to make a “real effort” to consider feasible alternatives to a mistrial and the record establishes manifest necessity.
¶ 32 Because “[t]he trial court is usually in the best position to determine whether manifest necessity requires a mistrial,” we review its decision for an abuse of discretion. Jones v. Kiger, 194 Ariz. 523, ¶¶ 9-10, 984 P.2d 1161, 1164 (App.1999). “The words ‘manifest necessity’ ... do not describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge.” Arizona v. Washington, 434 U.S. 497, 505-06, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). Thus, “the degree of deference [we] should accord the trial court depends on the circumstances that gave rise to the mistrial.” State v. Aguilar, 217 Ariz. 235, ¶ 13, 172 P.3d 423, 427 (App.2007). At one extreme, “the strictest scrutiny is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence.” Washington, 434 U.S. at 508, 98 S.Ct. 824. “At the other extreme is the mistrial premised upon the trial judge’s belief that the jury is unable to reach a verdict.” Id. at 509, 98 S.Ct. 824.
¶ 33 In Washington, the Supreme Court stated that defense counsel’s improper and prejudicial arguments to the jury “may have affected the impartiality of the jury” and “the overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge’s evaluation.” Id. at 510-11, 98 S.Ct. 824; see also United States v. Chapman, 524 F.3d 1073, 1082 (9th Cir.2008) (when trial court’s decision based on “own observations and personal assessment,” we must give special deference). Similarly, here, L.C.’s outbursts and subsequent commotion clearly were improper and may have affected the impartiality of the jury. Although nothing in the record suggests that either party caused or provoked the outbursts and commotion, in my view, the majority nevertheless improperly applies the strictest scrutiny in evaluating the trial court’s decision.
¶ 34 Notably, the state’s motion for a mistrial was content neutral. The prosecutor stated:
With everything that has been said, your Honor, and everything that, that has gone before, even the events of yesterday afternoon, or last evening, I now become concerned that we have a jury that, that may have a reduced ability to be fair and impartial in this matter.
The prosecutor made the motion “in the interest of justice and out of concern for the defendant’s right to a fair trial,” but he also stated that he was inclined to withdraw it if Woods did not join. When the trial court asked, “are you inclined to, or are you,” the prosecutor made clear:
I don’t want there to be any confusion about the State’s intention to bring this matter to verdict, whether it be this jury or a subsequent jury. So if the Court *223 believes that the State’s motion may be a waiver of that right, or result in a situation where the State would be precluded from retrying the defendant, I can’t allow that to be the end result.
So, again, if the Court has any concern about the State’s right to retry this matter if a mistrial is granted, then I’ll withdraw the motion.
Thus, contrary to the majority’s assertion, the prosecutor’s position was not equivocal. Supra, n. 6. And, given that position, it is clear the court considered whether Woods could be retried in making its determination and believed it had no other option but to declare a mistrial. In contrast, the majority’s decision punishes the state in the exact way the prosecutor sought to avoid.
¶ 35 Both the defendant and the state have a right to a trial decided by a fair and impartial jury. Washington, 434 U.S. at 516, 98 S.Ct. 824; State v. Reynolds, 11 Ariz.App. 532, 534, 466 P.2d 405, 408 (1970). “[T]he defendant’s right to a single trial ‘must in some instances be subordinated to the public’s interest in fair trials designed to end in just judgments.’” Aguilar, 217 Ariz. 235, ¶ 10, 172 P.3d at 426, quoting Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949). In this case, the trial court perceived an escalating series of events involving L.C. that culminated in its determination that the process was unfair to both Woods and the state.[8] Although Woods opposed the state’s motion for a mistrial, this is nonetheless a determination to which we owe great deference. See Washington, 434 U.S. at 510-11, 98 S.Ct. 824. “In short, [the trial court] is far more ‘conversant with the factors relevant to the determination’ than any reviewing court can possibly be.” Id. at 514, 98 S.Ct. 824, quoting Wade, 336 U.S. at 689, 69 S.Ct. 834.
¶ 36 I recognize our inquiry does not end with a determination that the trial court is entitled to great deference. We must be satisfied the court has “exercised ‘sound discretion’ in declaring a mistrial.” Id. As the Supreme Court stated in Washington, a trial court’s decision cannot be upheld if it “acts irrationally or irresponsibly.” Id. In this case, the court did not act irrationally or irresponsibly.
¶ 37 The majority first concludes the trial court “could have but did not ask the jurors whether any extraneous information might have come to their attention.” Supra, ¶ 15. But the record shows that polling the jury on this issue was not necessary because it is evident that the jurors were exposed to potentially prejudicial information. When discussing the incident with counsel, the court noted that after L.C. had left the courtroom, “one could hear from inside the courtroom the sound of a woman yelling,” “banging,” and “commotion outside of the court.” The court further stated the jury “could probably also hear [the] noise from outside.” The prosecutor informed the court that law enforcement officers were still outside “clearing the scene ... when the jury was allowed to exit the front of the courthouse.” The court thus reasonably concluded that the jury “knew ... [L.C.] had been stopped” by police. And, the court’s belief was confirmed when the court reporter indicated she had heard two jurors “discussing that the person being arrested ... was [L.C.].” Woods does not dispute any of this on appeal. Because the record already contained sufficient evidence that the jurors had witnessed the commotion involving L.C., polling the jury on this issue would have served little purpose.
¶ 38 Ideally, as the majority points out, the trial court also could have polled the jurors about their ability to remain impartial despite their observations of L.C.’s outburst and the ensuing commotion. Supra, ¶ 18. Because there were two alternate jurors, the court potentially could have dismissed only those who could not proceed. But, although the record does not show a mistrial was *224 absolutely necessary, “absolute necessity is not required” before declaring a mistrial. Aguilar, 217 Ariz. 235, ¶ 14, 172 P.3d at 427. “A trial court has acted within its sound discretion in rejecting possible alternatives and in granting a mistrial, if reasonable judges could differ about the proper disposition, even though ‘[i]n a strict literal sense, the mistrial [is] not necessary.’” State v. Givens, 161 Ariz. 278, 281, 778 P.2d 643, 646 (App.1989), quoting Washington, 434 U.S. at 511, 98 S.Ct. 824 (alterations in Givens). Indeed, the Supreme Court has cautioned against a “mechanical,” per se rule, instead adopting a “flexible standard,” which gives the trial court “broad discretion.” Illinois v. Somerville, 410 U.S. 458, 462, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973).
¶ 39 The majority also concludes the trial court could have given “a curative instruction and admonishment to the jury to disregard any commotion or conduct by L.C. after she left the courtroom.” Supra, ¶ 19. The record does not show that the court explicitly considered giving a curative instruction in response to the state’s request for a mistrial. But explicit findings on alternatives to a mistrial are not required, see Washington, 434 U.S. at 501, 516-17, 98 S.Ct. 824; Givens, 161 Ariz. at 281-82, 778 P.2d at 646-47, and the record suggests the court was aware of the option of giving an instruction but implicitly chose not to do so.
¶ 40 In denying Woods’s earlier motion for a mistrial based on L.C.’s in-court outburst, the trial court instead decided to give a curative instruction, admonishing the jury to disregard L.C.’s statements. But, at Woods’s urging, the court later withdrew that instruction. Thus, the record shows the court was fully aware of this alternative — and Woods’s opposition to it — when it granted the state’s motion for a mistrial the following day. See State v. Williams, 220 Ariz. 331, ¶ 9, 206 P.3d 780, 783 (App.2008) (we assume trial court knows and applies law). Moreover, “curative instructions ... ‘will not necessarily remove the risk of bias.’ ” State v. Gallardo, 225 Ariz. 560, ¶ 6, 242 P.3d 159, 163 (2010), quoting Washington, 434 U.S. at 513, 98 S.Ct. 824; see also State v. Runningeagle, 176 Ariz. 59, 68, 859 P.2d 169, 178 (1993) (“[T]here could be instances where a curative instruction may be inadequate____”). And, the trial court was in the best position to make that determination based on the escalating circumstances. See Jones, 194 Ariz. 523, ¶ 9, 984 P.2d at 1164.
¶ 41 Based on the record before us, I cannot agree that the trial court abused its discretion by declaring a mistrial. See id. ¶ 10. The circumstances leading to the court’s declaration of a mistrial spanned two days. Notably, Woods considered L.C.’s outburst the first day to be so egregious that he moved for a mistrial. Woods clearly believed he was prejudiced by L.C.’s conduct to merit requesting a mistrial at that point. As to the state’s motion for a mistrial made on the second day, the majority takes issue with the fact that neither the state nor the court articulated any prejudice to Woods or the state resulting from L.C.’s conduct. Supra, ¶ 25. But, given Woods’s own motion for a mistrial, and the escalating circumstances leading to the court’s determination, I do not believe such articulation was necessary. See Washington, 434 U.S. at 516-17, 98 S.Ct. 824 (trial court did not need to articulate on record all factors influencing decision to grant mistrial where basis for decision was “adequately disclosed by the record”). It is undisputed that the jury observed L.C.’s outburst as she was leaving the courtroom, that the jury presumably heard the commotion outside, and that the court reporter informed the court that at least two of the jurors had discussed L.C.’s arrest. Any prejudice thus became that much more apparent from the record. In addition, the state’s ability to receive a fair trial was equally implicated by these events.
¶ 42 The trial court “gave both defense counsel and the prosecutor full opportunity to explain their positions on the propriety of a mistrial.” Id. at 515-16, 98 S.Ct. 824. In addition, there were multiple in-ehambers and off-the-record conversations among the court and counsel, further demonstrating that the court “acted deliberately,” not “abruptly.” Chapman, 524 F.3d at 1082. Given Woods’s own request for a mistrial for similar but less egregious circumstances, the court’s decision is “entitled to special re *225 spect,” Washington, 434 U.S. at 510, 515-16, 98 S.Ct. 824, because it was in the best position, having just heard counsel’s arguments and assessed the situation over a two-day period, see also Jones, 194 Ariz. 523, ¶¶ 9-10, 984 P.2d at 1164. I thus cannot agree the court abused its discretion by declaring a mistrial. And, based on the foregoing, I conclude Woods’s right against being twice placed in jeopardy was not violated and dismissing the charges against him with prejudice is unwarranted and does not serve the interests of justice.

. The majority acknowledges that some of the trial spectators had made threats against Woods and the attorneys outside the jury's presence. Supra, n. 5. However, the spectators also made comments that at least one individual "pretty strongly [thought] w[ere] heard by the jury.” The spectators also engaged in "inappropriate behavior,” which included one spectator "changing [his] shirt in the middle of [the] jury proceeding.” These incidents presumably added to the escalating series of events with which the trial court was concerned.