393 P.3d 461

**STATE of Arizona, Appellee,**

v.

**Wade Cole DICKINSON, Appellant.**

**No. 1 CA–CR 14–0521**

Court of Appeals of Arizona, Division 1.

FILED 3/16/2017

As Amended March 29, 2017

Arizona Attorney General's Office, Phoenix, By Eliza C. Ybarra, Counsel for Appellee

Yavapai County Public Defender's Office, Prescott, By Jared G. Keenan, Counsel for Appellant

Presiding Judge Kent E. Cattani delivered the opinion of the Court, in which Judge Lawrence F. Winthrop and Chief Judge Michael J. Brown joined.

## OPINION

CATTANI, Judge:

¶1 Wade Cole Dickinson challenges on double jeopardy grounds his convictions and sentences for fraudulent schemes, forgery, taking the identity of another, and theft. He argues that because the convictions resulted from a second trial following a trial in which the superior court *sua sponte* ordered a mistrial over his objection, the second trial violated the Double Jeopardy Clauses of the United States and Arizona Constitutions. We agree because the mistrial did not result from a "manifest necessity" and was not essential to the ends of public justice. Accordingly, we vacate Dickinson's convictions and remand with instructions to enter a judgment of dismissal.

## FACTS AND PROCEDURAL BACKGROUND

¶2 The charges arose from the theft of a high-end mountain bike from a home in Cornville in March 2010, and its sale a few days later by Dickinson on Craigslist. During opening statements in the first trial (which began in August 2013), defense counsel told the jury that the mountain bike Dickinson had sold on Craigslist was not the bike stolen from Cornville, as evidenced by the difference between the serial number for the stolen bike and the serial number on the bike Dickinson sold.

¶3 Later, while cross-examining the person who bought the bike from Dickinson, Dickinson's counsel learned that the buyer's wife had recently given Prescott police officers a scrap of paper on which she had written two numbers that the Cornville theft victim told her had been on his mountain bike, one of which the buyer indicated matched a number on the bike he purchased from Dickinson. The buyer's wife apparently had the note for three years before giving it to the police two weeks before trial, and neither the prosecutor nor defense counsel was aware of the contents of the note until the buyer mentioned it during cross-examination.

¶4 After a lengthy discussion about possible ways to address the surprise testimony and the lack of timely disclosure of the note, the superior court asked the parties if they wanted a mistrial. Dickinson's counsel initially noted that one possible resolution was a mistrial, which would allow him to start over with a new opening statement and cross-examination "fully appri[s]ed of the evidence." But counsel made clear that he preferred instead to proceed with the same jury, without any further reference to the scrap of paper.

¶5 The prosecutor argued that dismissal with prejudice was not appropriate, and sug-

gested that empaneling a new jury was an option, or that alternatively the court could preclude further evidence of the note. The prosecutor concluded by noting that the State "can proceed forward with the exclusion of this evidence. It's not the State's first priority, because all facts should go to the jury. But, however, it's an option for the Court."

¶ 6 After again indicating his preference to go forward with trial, Dickinson's counsel indicated he would not move to strike the surprise testimony, because he believed doing so would emphasize it. Finally, Dickinson's counsel told the court that if it deemed a mistrial necessary, he would seek a dismissal with prejudice.

¶ 7 After the court declared a mistrial, Dickinson's counsel did not file a motion to dismiss with prejudice, and the second trial proceeded six months later, resulting in the convictions detailed above.

¶ 8 The court sentenced Dickinson to a total of 19.5 years in prison, to be served consecutively to a 5–year term imposed on revocation of probation in another case. Dickinson timely appealed, and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 13–4033.[1]

## DISCUSSION

### I. Double Jeopardy.

¶ 9 Dickinson argues that he did not consent to the mistrial and, because the mistrial was not manifestly necessary, the second trial was precluded by principles of double jeopardy. Although Dickinson did not move to dismiss the charges on double jeopardy grounds below, "the prohibition against double jeopardy is a fundamental right that is not waived by the failure to raise it in the trial court." *State v. Millanes*, 180 Ariz. 418, 421, 885 P.2d 106 (App. 1994).

¶ 10 Under the Double Jeopardy Clause, a person may not "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Arizona constitution provides similar protection. *See* Ariz. Const. art. II, § 10 ("No person shall

be compelled in any criminal case to ... be twice put in jeopardy for the same offense.").

¶ 11 The Double Jeopardy Clause not only protects a defendant's right to be free from multiple prosecutions, but also "embraces the defendant's 'valued right to have his trial completed by a particular tribunal.'" *Arizona v. Washington*, 434 U.S. 497, 503, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978) (quoting *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949)). Nevertheless, a defendant's right to a single trial "must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." *Wade*, 336 U.S. at 689, 69 S.Ct. 834.

¶ 12 "As a general rule, if the defendant successfully moves for or consents to a mistrial, retrial is not barred on double jeopardy grounds." *State v. Minnitt*, 203 Ariz. 431, 437, ¶ 28, 55 P.3d 774 (2002). But if the court declares a mistrial over the defendant's objection, retrial is only permitted if "taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *Washington*, 434 U.S. at 506 n.18, 98 S.Ct. 824 (quoting *United States v. Perez*, 22 U.S. 579, 580, 9 Wheat. 579, 6 L.Ed. 165 (1824)). We review claimed double jeopardy violations de novo, *see State v. Moody*, 208 Ariz. 424, 437, ¶ 18, 94 P.3d 1119 (2004), but we review a court's decision to grant a mistrial and its ruling on manifest necessity for an abuse of discretion. *McLaughlin v. Fahringer*, 150 Ariz. 274, 277, 723 P.2d 92 (1986).

### A. Consent.

¶ 13 The State argues that Dickinson consented to the mistrial because he (1) initially suggested it as a possible remedy, (2) affirmed that any other resolution would be unfair, (3) did not move to dismiss the case with prejudice (despite the superior court's repeated invitations to do so), and (4) requested that the trial be reset less than a week after the mistrial had been declared. We disagree.

1. Absent material revisions after the relevant  date, we cite a statute's current version.

¶ 14 Dickinson's counsel initially noted that a mistrial would be one possible resolution of the issue, and would allow him to start over with a new opening statement and cross-examination "fully appri[s]ed of the evidence." But he clearly indicated his preference to proceed without further reference to the untimely disclosed evidence. Although Dickinson's counsel equivocated somewhat and at one point observed that because of the late disclosure, "it sounds like the State of Arizona has put me in the position of moving for a mistrial at this point," counsel concluded by stating:

> I just hesitate to do that for numerous reasons; one of which is we seated a jury, I have made my presentation, I have showed my hand, I have played my hol[e] cards and now we are supposed to impanel a new jury at the detriment to my client. It's just not fair.
>
> Again, Judge, I'd ask that the scrap of paper not be admitted and no one make any reference to it any further.
>
> The only reason, just for the record, I am not asking the court to strike [the witness]'s testimony in that regard is because it simply emphasizes the error that is made and every attorney is always in a difficult position when they ask for a motion to strike. It just emphasizes the errors. So I am not making a motion to strike but I would request we keep this jury, proceed with the testimony with no reference to that scrap of paper.

¶ 15 The State notes that Dickinson's counsel's conduct after the court declared a mistrial—failing to move for dismissal with prejudice and requesting that the second trial be reset—suggests that Dickinson implicitly consented to the mistrial. But counsel's failure to do something after the mistrial was granted did not revoke his prior objection to the mistrial. Under these circumstances, we conclude that Dickinson adequately conveyed his objection to the mistrial.

### B. Manifest Necessity.

¶ 16 Because Dickinson did not consent to the mistrial, principles of double jeopardy bar retrial unless the mistrial resulted from a showing of manifest necessity such that the ends of public justice would otherwise be defeated. There is no rigid formula for determining whether manifest necessity requires a mistrial. The United States Supreme Court has noted, however, that the power to declare a mistrial "ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *Wade*, 336 U.S. at 690, 69 S.Ct. 834. In exercising discretion in deciding whether to grant a mistrial, "the trial judge must recognize that the defendant has a significant interest in deciding whether to take the case from the jury and 'retains primary control over the course to be followed in the event of such error.'" *Jones v. Kiger*, 194 Ariz. 523, 526, ¶ 9, 984 P.2d 1161 (1999) (citing *United States v. Dinitz*, 424 U.S. 600, 609, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976)).

¶ 17 As explained by the Supreme Court, there are varying degrees of "necessity," and "we require a 'high degree' before concluding that a mistrial is appropriate." *Washington*, 434 U.S. at 506, 98 S.Ct. 824. "The question whether that 'high degree' has been reached is answered more easily in some kinds of cases than others." *Id.* at 507, 98 S.Ct. 824. At one extreme are cases in which a prosecutor requests a mistrial to allow the State to buttress weaknesses in the State's evidence; at the other extreme are cases in which a mistrial is granted because a jury has been unable to reach a verdict. *Id.* at 508–09, 98 S.Ct. 824.

¶ 18 Courts apply the "strictest scrutiny . . . when the basis for a mistrial is the unavailability of critical prosecution evidence, or when there is reason to believe that the prosecutor is using the superior resources of the State to harass or to achieve a tactical advantage over the accused." *Id.* at 508, 98 S.Ct. 824. In contrast, if a mistrial is based on conduct by the defendant or defense counsel, or on a jury's inability to reach a verdict, reviewing courts accord "great deference" to the trial judge's decision. *Id.* at 509, 98 S.Ct. 824. This is because when conduct by the defendant or defense counsel leads to a mistrial, the defendant should not benefit from that conduct, and "the trial judge's determination is entitled to special

respect." *Id.* at 510, 98 S.Ct. 824. And the trial judge is best positioned to assess whether further deliberations would be helpful to jurors who have been unable to reach a verdict, and "fail[ure] to discharge a jury which is unable to reach a verdict after protracted and exhausting deliberations" creates "a significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors." *Id.* at 509, 98 S.Ct. 824.

¶ 19 Here, although the mistrial did not result from a prosecution attempt to buttress weaknesses in the State's evidence or to achieve a tactical advantage, the mistrial falls closer to that end of the spectrum than to cases involving a jury's inability to reach a verdict or improper conduct by the defendant or defense counsel. Neither Dickinson nor his counsel contributed in any way to the alleged need for a mistrial, and even assuming there was no malfeasance by the prosecutor, the fact remains that favorable evidence for the State was presented without having been disclosed to the defendant. Accordingly, the superior court's decision regarding manifest necessity for the mistrial is not one to which we will accord great deference. *See also State v. Aguilar*, 217 Ariz. 235, 242, ¶ 25, 172 P.3d 423 (App. 2007) (" '[A]long the spectrum of trial problems which may warrant a mistrial and which vary in their amenability to appellate scrutiny,' the failure of a prosecutor to discover and disclose evidence requires an exacting inquiry. Under such circumstances, we are required to strike the balance in favor of the defendant.") (citations omitted).

¶ 20 The superior court's decision to grant a mistrial does not survive scrutiny, particularly in light of Dickinson's opposition to the mistrial and the prosecutor's avowal that the State could "proceed forward with the exclusion of the evidence." Most significantly, the court failed to recognize Dickinson's interest in retaining primary control over the course to be followed after the jurors learned about information prejudicial to Dickinson but that had not been disclosed prior to trial. *See Dinitz*, 424 U.S. at 609, 96 S.Ct. 1075; *Kiger*, 194 Ariz. at 526, ¶ 9, 984 P.2d 1161.

¶ 21 In *Kiger*, this court reversed the superior court's denial of a motion to dismiss with prejudice after a prosecution witness disclosed arguably prejudicial hearsay evidence during cross-examination. 194 Ariz. at 525, 528, ¶¶ 3, 16, 984 P.2d 1161. Defense counsel asked the court to dismiss with prejudice if it believed that fundamental error had occurred. *Id.* at 525, ¶ 5, 984 P.2d 1161. After the court denied the request to dismiss with prejudice, defense counsel "insisted that the hearsay testimony was not prejudicial to his case and requested that the trial continue." *Id.* Nevertheless, the court *sua sponte* granted a mistrial, finding that the hearsay was of "the type that I would never ever allow" and that in "just watching the response of the jurors to that testimony, that ... they all changed their facial features and looked as it was, as I interpreted, had [sic] a significant impact on them." *Id.*

¶ 22 This court rejected the superior court's approach, noting the importance of allowing the defendant to retain control under such circumstances:

> [The defendant] may believe that any error in admitting improper evidence can be cured by a motion to strike or a request for admonition, or can be refuted by impeachment of the witness or contrary defense evidence. Indeed, even when a palpably prejudicial error has been committed a defendant may have valid personal reasons to prefer going ahead with the trial rather than beginning the entire process anew, such as a desire to minimize the embarrassment, expense, and anxiety mentioned above. These considerations are peculiarly within the knowledge of the defendant, not the judge, and the latter must avoid depriving the defendant of his constitutionally protected freedom of choice in the name of a paternalistic concern for his welfare.

*Id.* at 526, ¶ 9, 984 P.2d 1161 (quoting *Curry v. Superior Court*, 2 Cal.3d 707, 87 Cal.Rptr. 361, 470 P.2d 345, 351 (1970)).

¶ 23 Here, the superior court reasoned that prejudicial information had inadvertently been presented to the jurors, and further concluded that the jurors would be confused without more explanation. Although juror confusion is a valid consideration in

determining whether to grant a mistrial, any assessment of whether the jurors would have been unable to reach a verdict was premature. *Cf. State v. Walton*, 159 Ariz. 571, 578, 769 P.2d 1017 (1989) ("First, speculation about *'potential* confusion among jurors' is insufficient to establish actual jury confusion."). Moreover, the allegedly confusing information was clearly prejudicial to Dickinson, rather than the State. But Dickinson did not view the information to be of such a prejudicial nature or to be so confusing as to deny him his right to a fair trial, and his assessment of the need for a mistrial (or lack thereof) carries considerable weight. *See Dinitz*, 424 U.S. at 609, 96 S.Ct. 1075; *Kiger*, 194 Ariz. at 526, ¶ 9, 984 P.2d 1161. In fact, defense counsel may have had tactical reasons for wanting to go forward with trial, including that a mistrial would simply result in delay and an opportunity for the prosecutor to further develop the reliability of the briefly-referenced note. *See Kiger*, 194 Ariz. at 527, ¶ 11, 984 P.2d 1161 ("Defense counsel wanted to continue with the trial, not only because he did not find the hearsay testimony prejudicial, but also because the State would then have a second opportunity to present potentially damaging testimony that it had been precluded from introducing in the first trial.").

¶ 24 In *Aguilar*, this court noted a general rule that "the state's inability to use a piece of evidence does not constitute manifest necessity for a mistrial." 217 Ariz. at 240, 172 P.3d 423 (citing cases from other jurisdictions). It follows, then, that the State's inability to further mention evidence that was prejudicial to the defendant and that was inadvertently presented to the jurors similarly does not constitute manifest necessity for a mistrial. Accordingly, and because there potentially was a tactical reason for Dickinson's decision to proceed with trial notwithstanding the damaging information disclosed during cross-examination, the superior court abused its discretion by finding manifest necessity for the mistrial.

## CONCLUSION

¶ 25 For the foregoing reasons, we reverse Dickinson's convictions and sentences and re-

mand with instructions to dismiss the charges with prejudice.