NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

PAUL ANTHONY CASTILLO, *Appellant.*

No. 1 CA-CR 18-0436
FILED 4-25-2019

Appeal from the Superior Court in Maricopa County
No. CR2016-120583-001
The Honorable Ronda R. Fisk, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

The Stavris Law Firm, PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Paul J. McMurdie delivered the decision of the Court, in which Judge Randall M. Howe and Judge Jennifer B. Campbell joined.

_____

**M c M U R D I E**, Judge:

**¶1**  Paul Anthony Castillo appeals his convictions and sentences for three counts of aggravated assault and one count for leaving the scene of a serious injury accident, all felonies. Castillo argues: (1) the superior court abused its discretion by denying his motion for a mistrial during the victim's testimony; and (2) the superior court committed fundamental error when the court did not declare a mistrial *sua sponte* following the victim's testimony. For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND[1]**

**¶2**  On May 1, 2016, two of Castillo's sisters met with Rosemary (Castillo's ex-girlfriend) and Kevin (Rosemary's brother). After a brief, amicable discussion, Castillo arrived at the meeting. Kevin and Castillo began arguing, and Rosemary attempted to hit Castillo. Rosemary's mother Patricia and her husband then arrived. Patricia attempted to hit Castillo with a metal object as he tried to get back into his car. Eventually, Castillo got into the car and drove away as Patricia and Rosemary chased after Castillo on foot.

**¶3**  Castillo abruptly turned around and headed toward Patricia and Rosemary. As he approached the women, he sped up and intentionally swerved into them. After the collision, Castillo left the scene with his sister following him in her car. Castillo eventually stopped and got into his sister's car. She drove Castillo to a nearby Circle K where she called the police.

**¶4**  When paramedics reached Patricia and Rosemary, Patricia could only remember her name; she did not know where she was, what had

---

[1]  We view the facts in the light most favorable to upholding the verdicts and resolve all reasonable inferences against Castillo. *State v. Harm*, 236 Ariz. 402, 404, ¶ 2, n.2 (App. 2015) (citing *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996)).

happened, or what day it was. The paramedics observed a fracture that penetrated through the skin on Patricia's right ankle, instability in her right femur, and bruising to the right side of her abdomen. They also noted that Rosemary sustained injuries to her arms and hands.

¶5 The State charged Castillo with three counts of aggravated assault relating to Patricia (counts 1, 2, and 3), one count of aggravated assault relating to Rosemary (count 4), one count of leaving the scene of an accident resulting in serious injury concerning Patricia (count 5), and one count of leaving the scene of an accident resulting in injury relating to Rosemary (count 6). Before the trial, Castillo and the State agreed that the State would not introduce evidence of Castillo's heroin use. The parties agreed that the State could elicit testimony regarding Castillo's demeanor that day, but unless the officer had "some specialized training or experience," he would not opine on whether Castillo was under the influence of heroin.

¶6 During the State's case-in-chief, the State called numerous witnesses, including eye-witnesses, police officers, medical professionals, and Patricia. Patricia testified that she was married and had six children, but that one child had recently passed away. Patricia further testified that Rosemary was absent because she had recently lost a child during pregnancy. Patricia also testified regarding the extent of her injuries, indicating: she must use a "potty thing, because [she] can't sit on a normal toilet;" she has screws in her knees that were "popping out;" and she was unable to walk for "[a]bout six months" following the incident. During Patricia's testimony, the following exchange occurred:

> [State:] Do you remember much of that day?
>
> [Patricia:] I just remember us going to church.
>
> [State:] Okay.
>
> [Patricia:] Then we went to the store, me and my husband. We were really happy. And I bought him some shoes because the dress shoes that he wears he has a bunion that he has to get surgery and he hasn't gone and got it, and I bought him some really nice shoes and I put them on. We were happy. And then we came back to the neighborhood home, and all's I remember is parking in front of the store and seeing my daughters. And I seen girls, but I don't know

who those people were, and I was just yelling at them, "What's going on? What's going on?" And they just kept walking. And I got up, and I went after them, "What's going on? What's going on?" And somebody yells, "It's [Castillo]. He's acting stupid." And I said, "Oh, my god, he's on heroin again," and I got frustrated—

¶7        Castillo objected and moved for a mistrial at a bench conference. The court excused the jury and heard argument on the mistrial motion. Castillo argued that the witness's non-responsive and "highly prejudicial" statement regarding heroin use required a mistrial. The court denied the motion but struck the statement and instructed the jury to disregard it. The court additionally directed Patricia to respond only to the questions asked, and the defense agreed to allow the State to ask leading questions. Finally, before deliberating, the court instructed the jury that they could "not be influenced by sympathy or prejudice" and "[a]ny testimony stricken from the court record must not be considered."

¶8        The jurors found Castillo guilty of aggravated assault (counts 1, 2, and 3) and leaving the scene of a serious injury accident (count 5) regarding Patricia. They found Castillo not guilty on the remaining two counts relating to Rosemary. Following an aggravation phase, the jury found aggravating factors on counts 1, 2, and 3. The court found Castillo had a historical prior felony conviction and sentenced him to 6.5 years on count 1 and to 4.5 years each on counts 2 and 3 to be served concurrently. Additionally, the court sentenced Castillo to 3.25 years relating to count 5 to be served consecutively to counts 1, 2, and 3. Castillo timely appealed. We have jurisdiction under Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), -4031, and -4033(A)(1).

## DISCUSSION

A.    **The Superior Court Did Not Abuse Its Discretion by Denying Castillo's Motion for a Mistrial Following the Testimony of the Victim.**

¶9        Castillo argues that the superior court erred by denying his motion for a mistrial following Patricia's testimony about his potential heroin use. We review the court's decision to grant or deny a mistrial for an abuse of discretion. *State v. Adamson*, 136 Ariz. 250, 263 (1983). "[A] declaration of a mistrial is the most dramatic remedy for trial error," and

should only be granted "when it appears that justice will be thwarted." *Id.* at 262. If a witness unexpectedly volunteers inadmissible evidence, "the trial court must decide whether a remedy short of mistrial will cure the error." *State v. Jones*, 197 Ariz. 290, 304, ¶ 32 (2000). The superior court is afforded broad discretion because it "is in the best position to determine whether the evidence will actually affect the outcome of the trial." *Id.*

**¶10** The State did not elicit Patricia's statement; instead, she spontaneously volunteered it. Immediately following the statement, the court heard argument whether a mistrial was necessary. The court considered remedies short of a mistrial and concluded that a curative instruction was appropriate. *See Jones*, 197 Ariz. at 304, ¶ 32 (the superior court may consider remedies short of a mistrial). The court gave the curative instruction immediately upon the jury's return to the courtroom. Also, before jury deliberation, the court instructed the jury to disregard any stricken testimony. We presume the jurors followed these instructions. *See State v. Goudeau*, 239 Ariz. 421, 450, ¶ 95 (2016). Neither Castillo's arguments nor our review of the record reveals any reason that the presumption was overcome here. Accordingly, the superior court did not abuse its discretion.

**B. The Superior Court did not Commit Err by Failing to Declare a Mistrial *Sua Sponte* Following the Victim's Testimony.**

**¶11** Castillo further alleges Patricia's testimony about her son's death, the extent of her injuries, and the reason Rosemary was not present for the trial was irrelevant and created undue prejudice that warranted a mistrial. We disagree.

**¶12** Castillo failed to request a mistrial on these grounds; therefore, we review only for fundamental error. *State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 19–20 (2005). Our supreme court has recently described a defendant's burden on fundamental error review as follows:

> A defendant establishes fundamental error by showing that (1) the error went to the foundation of the case, (2) the error took from the defendant a right essential to his defense, *or* (3) the error was so egregious that he could not possibly have received a fair trial. If the defendant establishes fundamental error under prongs one or two, he must make a separate showing of prejudice, which also "involves a fact-intensive inquiry."

*State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018) (quoting *Henderson*, 210 Ariz. at 568, ¶ 26). Because mistrials raise issues of double jeopardy, a party

must ordinarily ask for a mistrial, *State v. Laird*, 186 Ariz. 203, 207 (1996), and the superior court must find a "manifest necessity" to declare one, *State v. Dickinson*, 242 Ariz. 120, 124, ¶¶ 16–17 (App. 2017).

**¶13** Castillo argues that the now-complained-of testimony was irrelevant and unfairly prejudicial under Arizona Rule of Evidence 403, which required the superior court to declare a mistrial *sua sponte*. The superior court has broad discretion in deciding the admissibility of evidence. *State v. Harrison*, 195 Ariz. 28, 33. ¶ 21 (App. 1998). Further, the court should use restraint before interjecting into witness' testimony because the defense "may have had tactical reasons" for moving forward and not objecting. *Dickinson*, 242 Ariz. at 126, ¶ 23.

**¶14** Here, the court did not err by failing to declare a mistrial *sua sponte* because the statements were arguably admissible. First, the death of Patricia's son was not elicited by the prosecution; however, it did provide background about the witness and helped explain her emotional state while testifying. Next, the State may elicit testimony why a victim is not present if the testifying witness has personal knowledge of those reasons. *See* Ariz. R. Evid. 602 (requiring personal knowledge to testify). And finally, the extent of the victim's injuries is relevant and needed to establish aggravated assault under A.R.S. § 13-1204(A)(3). *See State v. Pena*, 235 Ariz. 277, 280, ¶ 11 (2014) (jury must decide, based on the evidence presented, whether injuries sustained qualify under A.R.S. § 13-1204(A)(3)).

**¶15** Castillo argues these unresponsive statements improperly made Patricia seem more sympathetic. However, as the State posits, her comments might also paint her as a "loose cannon." The defense could have had tactical reasons for not requesting a mistrial. *See Dickinson*, 242 Ariz. at 126, ¶ 23. Additionally, the court instructed the jurors not to be "influenced by sympathy or prejudice." We presume they followed this instruction concerning all witnesses. *See Goudeau*, 239 Ariz. at 450, ¶ 95. Therefore, the superior court did not err. And because there was no error, we decline to address Castillo's argument of unfair prejudice. *See Escalante*, 245 Ariz. at 142, ¶ 21 (to obtain relief on appeal for fundamental error, a defendant must first prove error).

## CONCLUSION

¶16     For the foregoing reasons, we affirm Castillo's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:  AA