IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JIE Q. ROBBINS, *Petitioner*,

*v.*

STATE OF ARIZONA ex rel. RACHEL H. MITCHELL, Maricopa County
Attorney, *Respondent,*

ZACHARY ANDREW ROBBINS, *Petitioner*,

*v.*

STATE OF ARIZONA ex rel. RACHEL H. MITCHELL, Maricopa County
Attorney, *Respondent.*

No. 1 CA-SA 25-0153
1 CA-SA 25-0154 (Consolidated)

FILED 12-31-2025

Appeal from the Superior Court in Maricopa County
No. CR2019-150787-001, CR2019-150787-002
The Honorable Daniel G. Martin, Judge

**VACATED AND REMANDED**

COUNSEL

Feldman & Royle, PLLC, Phoenix
By David E. Ahl
*Counsel for Petitioners*

Maricopa County Attorney's Office, Phoenix
By Quinton S. Gregory
*Counsel for Respondent*

---

**OPINION**

---

Presiding Judge Jennifer M. Perkins delivered the opinion of the Court, in which Judge James B. Morse Jr. and Judge D. Steven Williams joined.

---

**P E R K I N S**, Judge:

¶1        Jie Q. Robbins and her husband Zachary Andrew Robbins, defendants in this criminal matter, filed this special action after a mistrial in their joint trial, arguing retrial would violate their double jeopardy rights. They first argue the superior court should have granted their motions to dismiss with prejudice for prosecutorial misconduct. We disagree. They also argue the court erred by dismissing the case without prejudice for the State to retry the defendants. We agree because the defendants did not consent to the mistrial unless the court also dismissed the case with prejudice, and no manifest necessity existed for a mistrial. Double jeopardy thus bars retrial. We therefore accept special action jurisdiction and grant the requested relief.

## FACTS AND PROCEDURAL BACKGROUND

¶2        In 2019, the State charged Jie and Zachary with money laundering, illegal control of an enterprise, and attempt to commit trafficking in stolen property, alleging the defendants purchased and resold stolen products. Almost five years later, and less than a month before trial, the State disclosed two police reports and certifications for PayPal and eBay records it intended to introduce at trial. The defendants moved to preclude that evidence. The court found the State had untimely disclosed the reports and records and ordered both precluded along with any testimony relating to them.

¶3        The case went to trial, which was expected to last 16 days. During opening statements, the State unsuccessfully moved for a mistrial after Jie's counsel played a recording of a detective calling Jie a racial slur.

2

¶4 On the eighth day of trial, before playing a recording of Jie's police interview, the prosecutor informed the court that he planned to stop the recording before the detective mentioned the precluded PayPal records. The court approved. The prosecutor stopped the clip earlier than anticipated after the detective made this statement: "I've looked at your bank records and you're selling millions of dollars worth of products."

¶5 Jie's counsel moved for a mistrial, arguing the statement clearly referenced the precluded PayPal records because the bank records in evidence did not show millions of dollars in sales. Jie's counsel requested, "additionally," that the court "dismiss this case with prejudice" because the prosecutor failed to redact references to the precluded records, and counsel could not effectively combat the error.

¶6 Zachary's counsel "agree[d] with and join[ed] in [Jie's counsel's] sentiment" and requested "dismissal with prejudice."

¶7 The prosecutor explained that he had mistakenly overlooked the detective's reference to the PayPal records because it was not explicit, and when he realized the mistake, he paused the recording to divert the jury's attention away from it.

¶8 The court granted a mistrial after finding there was manifest necessity for one. The court then denied the defendants' motion to dismiss with prejudice because the State's conduct fell short of the intentional bad faith conduct required for such a dismissal.

¶9 After that ruling, Zachary's counsel clarified that he had only asked for dismissal with prejudice, not a mistrial absent dismissal with prejudice. And he requested that the trial continue because it was going well for Zachary, and starting over with a different jury would prejudice him.

¶10 Jie's counsel also noted that the trial was going well for Jie, and he requested time to talk to Jie before deciding between a mistrial and continuing with trial.

¶11 The court cut off Jie's counsel's argument and warned him to "be careful" because he had asked for a mistrial—the court did not initiate it sua sponte. Jie's counsel responded, "Correct." Then, with no further consideration, the court affirmed its grant of a mistrial, noting: "There's no turning back at this point once the Court has determined a fundamental error has occurred. I'm not going to continue on with this trial. Simple as that." The court then dismissed the jury.

**¶12**        The court permitted the defendants to file written motions to reconsider the court's denial of their request to dismiss with prejudice. Both defendants filed such motions. The court denied both, finding that the prosecutor's mistake resulted from an "[in]sufficient [] mastery of the [] evidence," rather than "intentional conduct pursued for an improper purpose." The defendants then petitioned for special action relief.

## SPECIAL ACTION JURISDICTION

**¶13**        Special action jurisdiction is highly discretionary, but if a question is of constitutional significance and no adequate remedy exists on appeal, we generally accept review. *Milke v. Mroz*, 236 Ariz. 276, 279, ¶ 2 (App. 2014). Interlocutory double jeopardy claims are appropriate for special action review because the commencement of retrial would violate the Double Jeopardy Clause. *State v. Moody*, 208 Ariz. 424, 438, ¶ 22 (2004). We therefore accept jurisdiction to address whether double jeopardy bars the continued prosecution of the defendants.

## DISCUSSION

**¶14**        The defendants argue their retrial is barred by the Double Jeopardy Clauses of the United States and Arizona Constitutions. *See* U.S. Const. amend. V; Ariz. Const. art. 2, § 10; *State v. Kelly*, 257 Ariz. 128, 132, ¶ 6 n.1 (App. 2024) ("The double jeopardy provision of the Arizona Constitution is virtually identical to its federal counterpart, and the analysis under each is the same." (cleaned up)). Double jeopardy prohibits more than one prosecution for a single offense. *State v. Aguirre*, __ Ariz. __, __, ¶ 25 (App. 2025). "Declaring a mistrial after selecting a jury implicates double jeopardy." *Id*.

**¶15**        The defendants argue double jeopardy precludes retrial because (1) the prosecutor's misconduct required dismissal with prejudice, and (2) the court granted a mistrial without their consent or manifest necessity for one. We address each argument in turn.

**¶16**        We review *de novo* whether double jeopardy bars retrial. *Moody*, 208 Ariz. at 437, ¶ 18. We review the denial of a motion to dismiss with prejudice due to prosecutorial misconduct for an abuse of discretion. *State v. Korovkin*, 202 Ariz. 493, 495, ¶ 5 (App. 2002). We also review the grant of a mistrial for an abuse of discretion. *State v. Dickinson*, 242 Ariz. 120, 123, ¶ 12 (App. 2017).

## I. Denial of the motions to dismiss with prejudice

¶17        The superior court must dismiss charges with prejudice if a prosecutor engaged in (1) improper conduct, (2) which is "not merely the result of legal error, negligence, mistake, or insignificant impropriety, but, taken as a whole, amounts to intentional conduct which the prosecutor knows to be improper and prejudicial," (3) and prejudice results "which cannot be cured by means short of a mistrial." *Pool v. Superior Court*, 139 Ariz. 98, 108–09 (1984). Double jeopardy is then triggered because the State "intentionally expos[ing] the defendant to multiple trials for the same crime . . . is exactly what the double jeopardy provision intended to prevent." *State v. Jorgenson*, 198 Ariz. 390, 392, ¶ 6 (2000) (cleaned up).

¶18        The parties only dispute the second *Pool* factor—whether the prosecutor's mistake was intentional or, as the court found, resulted from the prosecutor not having a "sufficient mastery of the State's evidence." Absent clear error, we defer to the superior court's findings on whether a prosecutor's conduct was intentional. *Korovkin*, 202 Ariz. at 495, ¶ 8.

¶19        On this record, we cannot conclude the court clearly erred by finding the prosecutor's mistake was unintentional. The prosecutor avowed to the court that when reviewing the recording, he did not notice the reference to the precluded records because they were not mentioned directly. He thus played that portion of the recording by "mistake," and not as an "intentional act." The court assessed the prosecutor's credibility firsthand, and nothing in the record suggests that his explanation was less than forthcoming when he explained he had simply overlooked the reference to the precluded records. *See State v. Smith*, 250 Ariz. 69, 86, ¶ 62 (2020) (we defer to the court's assessment of a prosecutor's credibility).

¶20        We are not persuaded by the defendants' arguments that the prosecutor's error was intentional. They assert that the prosecutor demonstrated prior knowledge of the recording's contents by identifying a portion to redact. But the fact that the prosecutor identified one mention of the precluded records does not mean he also identified and then intentionally disregarded a separate indirect reference to those records. This is consistent with the prosecutor's explanation that he overlooked the "millions of dollars" comment when reviewing the recording.

¶21        The defendants also argue that the prosecutor intended to seek a mistrial because the trial was going poorly for the State. And that the prosecutor revealed this intent during opening statements by waiting to object to the video of the detective's racial slur until after defense counsel

played it for the jury. These speculative claims do not overcome the court's finding that the prosecutor lacked knowledge of the recording's improper content before playing it for the jury. The court did not abuse its discretion by denying the defendants' motions to dismiss with prejudice.

## II.    Grant of a mistrial

¶22        When a court declares a mistrial (1) without the defendant's consent, and (2) when no manifest necessity exists for entering the mistrial, double jeopardy prohibits retrial. *McLaughlin v. Fahringer*, 150 Ariz. 274, 277–78 (1986).

### A.    Consent

¶23        Arizona courts have held that a defendant does not consent to a mistrial for double jeopardy purposes by merely failing to object to its declaration, *State v. Fenton*, 19 Ariz. App. 274, 276 (App. 1973), unless "that silence . . . in the context of other circumstances indicate[s] consent." *State v. Henderson*, 116 Ariz. 310, 314 (App. 1977) (inferring consent to a mistrial when defense counsel "actively participated" and had "every opportunity" to object but did not do so). Arizona courts have yet to address whether requesting a mistrial but then revoking that request after the court grants it but before the jury is dismissed constitutes consent to a mistrial. *See, e.g.*, *Dickinson*, 242 Ariz. at 124, ¶ 15 (no consent because defendant objected to the mistrial before it was declared); *McLaughlin*, 150 Ariz. at 276 (lack of consent was not at issue); *Jones v. Kiger*, 194 Ariz. 523, 525, ¶ 5 (App. 1999) (same). In the absence of controlling Arizona authority, we may turn to federal precedent for guidance.

¶24        The Ninth Circuit Court of Appeals has held that to consent to a mistrial, defense counsel must "affirmatively indicate his understanding that there could and would be a retrial" and must "not object to the order of mistrial." *United States v. Smith*, 621 F.2d 350, 352 (9th Cir. 1980); *see also Glover v. McMackin*, 950 F.2d 1236, 1240 (6th Cir. 1991) (a defendant consents when "the circumstances positively indicate [his or her] willingness to acquiesce in the mistrial order") (cleaned up). A defendant who moves for a mistrial without "explicitly limit[ing] his [or her] request to a mistrial with prejudice," does "not consent to the mistrial" if he or she later makes "clear that [he or she] only desired a mistrial if jeopardy would attach." *Weston v. Kernan*, 50 F.3d 633, 637 (9th Cir. 1995).

### 1. Jie

¶25 The State argues Jie consented to the mistrial without prejudice because her counsel requested a mistrial and affirmed the request when the court raised the issue.

¶26 In *Weston*, the defendant made an oral request for a mistrial but did not specify whether he sought the mistrial with or without prejudice. 50 F.3d at 637. He later filed a written motion clarifying that he sought only a mistrial with prejudice. *Id.* The trial court then orally declared a mistrial without prejudice, to which the defendant immediately and repeatedly objected. *Id.* The Ninth Circuit concluded the defendant had not consented to a mistrial without prejudice. *Id.*

¶27 Similarly, Jie's counsel's initial request was ambiguous because he requested a mistrial and "additionally" dismissal with prejudice. And after the court declared the mistrial, Jie's counsel asked to speak with Jie before deciding whether to accept the mistrial or continue on. By immediately expressing his uncertainty on whether to accept the mistrial without prejudice, Jie's counsel clarified, like in *Weston*, that his initial request only sought a mistrial with prejudice. Because the court denied counsel's request to confer with Jie to determine his client's position, counsel never "affirmatively indicate[d] his understanding that there could and would be a retrial." *Smith*, 621 F.2d at 352. Accordingly, Jie did not consent to a mistrial without prejudice.

¶28 Contrary to the State's contention, Jie's counsel did not affirmatively acquiesce to a mistrial without prejudice merely by confirming that he initially requested a mistrial. When Jie's counsel asked to confer with Jie, the court cautioned him: "Be careful. Who asked for a mistrial in this case? It was not the Court. It was you." And Jie's counsel responded: "Correct." This response only confirmed that counsel asked for a mistrial, not whether he asked for a mistrial with or without prejudice.

¶29 Finally, the State argues Jie's counsel's "waffling after the trial court granted the mistrial . . . is irrelevant" because any objections had to be raised "prior to the court's declaration of mistrial." But Arizona courts have considered defense counsel's conduct after a mistrial is declared as relevant in determining consent. *See, e.g.*, *Henderson*, 116 Ariz. at 314 ("The record at the time of mistrial strongly suggests concurrence in the trial judge's action, and the *events thereafter* are consistent only with and confirm consent." (emphasis added)); *Dickinson*, 242 Ariz. at 124, ¶ 15 (considering "counsel's failure to do something after the mistrial was granted").

**¶30**        The State cites *United States v. Palmer*, 122 F.3d 215 (5th Cir. 1997) in support, but *Palmer* does not aid the State here. The court in *Palmer* held that a defendant's objections to a mistrial must be "stated *contemporaneously* with the declaration of mistrial" to avoid providing consent. *Id.* at 219 (emphasis added). And other federal cases have found a defendant's statements "*after* the order of mistrial are relevant to the issue of implied consent," as long as "they come before the actual dismissal of the jury." *Smith*, 621 F.2d at 352, n.2 (emphasis added); *see also Camden v. Cir. Ct. of Second Jud. Cir.*, 892 F.2d 610, 616 n.7 (7th Cir. 1989) ("A trial court is [able] to reconsider its intention to declare a mistrial" until "the jury is discharged and has dispersed"). Such a rule is necessary to allow a defense counsel to preserve objections by making prompt mistrial requests. Prohibiting counsel from withdrawing a mistrial request when doing so serves a client's best interests would deter such requests and thus hamper a defendant's ability to preserve trial objections. *United States v. Gaytan*, 115 F.3d 737, 743 (9th Cir. 1997) ("It is important for defendants to have the chance fully to assess their positions as of the time the mistrial is ordered," in part, to allow defense counsel to "discuss the various possible choices with their clients."(cleaned up)). Accordingly, Jie did not consent to a mistrial without prejudice based on her counsel's statements following the court's mistrial declaration.

### 2.    Zachary

**¶31**        It is even clearer that Zachary did not consent to a mistrial without prejudice. First, his counsel never explicitly requested a mistrial. He only asked for "dismissal with prejudice." The State argues Zachary's counsel requested a mistrial without prejudice because he stated: "I would agree with and join in [Jie's counsel's] sentiment" after Jie's counsel made his motion. But, at most, this made it "ambiguous" as to whether Zachary's counsel "limit[ed] his request to a mistrial with prejudice." *Weston*, 50 F.3d at 637. And any ambiguity quickly dissipated because after the court declared the mistrial, Zachary's counsel repeatedly emphasized that he only requested dismissal with prejudice, not a mistrial without prejudice. Because counsel made these objections before the jury was dismissed, he revoked any consent to a mistrial without prejudice. *See Smith*, 621 F.2d at 352 n.2; *Weston*, 50 F.3d at 637 ("[The defendant] did not consent to the . . . mistrial without prejudice [declared] over defense counsel's repeated objections.").

### B.  Manifest Necessity

**¶32**　　　　Courts apply varying degrees of scrutiny in reviewing whether there was manifest necessity for a mistrial. *Dickinson*, 242 Ariz. at 124, ¶ 17. At one extreme, we apply "the strictest scrutiny" to mistrials resulting from the State's attempt to bolster its evidence or gain "a tactical advantage over the accused." *Id.* at 124–25, ¶¶ 18–19 (cleaned up). At the other extreme, we "accord great deference" to mistrials resulting from "conduct by the defendant or defense counsel." *Id.* at 124, ¶ 18 (cleaned up). Here, because the mistrial was based on the State's mistaken presentation of favorable evidence, with no fault by the defendants, the scrutiny is more strict and "we will [not] accord great deference" to "the superior court's decision regarding manifest necessity for the mistrial." *Id.* at 125, ¶ 19.

**¶33**　　　　In these circumstances, a court abuses its discretion by granting a mistrial without the defendant's consent while failing to consider the defendant's interest in proceeding with trial, *see Dickinson*, 242 Ariz. at 125, ¶ 20; *Kiger*, 194 Ariz. at 526–27, ¶¶ 9–10, unless proceeding with trial "would make reversal on appeal a certainty," *State v. Madison*, 114 Ariz. 221, 224 (1977) (quoting *Illinois v. Somerville*, 410 U.S. 458, 464 (1973)); *Aguirre*, __ Ariz. at __, ¶ 43. The court here abused its discretion in granting the mistrial because (1) it refused to consider the defendants' interests in proceeding with the trial, and (2) reversal on appeal was not certain if the trial had proceeded to a guilty verdict.

**¶34**　　　　The court failed to consider the defendants' interests in continuing with the trial. After the court declared a mistrial finding manifest necessity for one, Zachary's counsel asked to "continue on with the trial," given "how far we [are] into this case and . . . how it's [been] going." And Jie's counsel asked to talk with Jie before deciding between a mistrial and continuing, noting "we [are] doing well in [the trial], with a jury that we like." The court denied defense counsels' requests to confer with their clients and declined to reconsider its mistrial declaration in light of the defendants' stated interests in proceeding with trial. That denial was premised on the court's incorrect conclusion that there was "no turning back at this point."

**¶35**　　　　At oral argument in superior court, the State argued that once the court found manifest necessity for a mistrial, the court could not reconsider that finding. But, as we noted *supra* ¶¶ 29–30, no Arizona authority prevents, and federal law expressly permits a court to "reconsider its intention to declare a mistrial" before excusing the jury. *United States v. Segura-Gallegos*, 41 F.3d 1266, 1271 (9th Cir. 1994); *see also United States v.*

*DiPietro*, 936 F.2d 6, 11 (1st Cir. 1991) (same); *Creighton v. Hall*, 310 F.3d 221, 228 (2d Cir. 2002) (same).

¶36          Because the jury had not been dismissed when the court declined to reconsider its mistrial order, the initial order was not yet final. And the court's initial manifest necessity finding was incomplete because the court had not been aware that the defendants preferred to continue with trial when it made that finding. *See Kiger*, 194 Ariz. at 526, ¶ 9 ("When considering a mistrial, the trial judge must recognize that the defendant has a significant interest in deciding whether to take the case from the jury and retains primary control over the course to be followed in the event of such error."(cleaned up)). Therefore, the court should have reconsidered its mistrial order in light of defendants' preference for trial to continue. *See Dickinson*, 242 Ariz. at 125, ¶ 20 (the mistrial order did not survive scrutiny because the court failed to consider the defendant's opposition to the mistrial); *State v. Woods*, 237 Ariz. 214, 219–20, ¶¶ 20–22 (App. 2015) (the court abused its discretion by granting a mistrial because the "court made no further inquiry after [the defendant] stated he preferred to continue with the trial").

¶37          Reversal on appeal was not a certainty had the trial continued. When "reversal on appeal is a certainty, the Double Jeopardy Clause does not require" the case to proceed to trial if a conviction would automatically be reversed by an appellate court. *Aguirre*, __ Ariz. at __, ¶ 37. Because a defendant "normally waives his [or her] right to raise on appeal the defect that prompted the mistrial offer" if he or she "rejects the mistrial offer or withdraws a prior motion for a mistrial," the defect must constitute fundamental error to be reversible on appeal. *United States v. Huang*, 960 F.2d 1128, 1135 (2d Cir. 1992) (discussing "plain error"); *see State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005) (we review for fundamental error when the defendant fails to object to the alleged error at trial); *State v. Hood*, 251 Ariz. 57, 61, ¶ 14 (App. 2021) (citing the federal plain error doctrine because it is analogous to Arizona's fundamental error doctrine).

¶38          Had the trial continued at the defendants' request, they would have waived any appellate challenge—outside of fundamental error—to the State playing the recording in question for the jury. Fundamental error is limited to situations in which "(1) the error went to the foundation of the case, (2) the error took from the defendant a right essential to his defense, *or* (3) the error was so egregious that he could not possibly have received a fair trial." *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018). The court excluded the evidence based on late disclosure, and there is no indication that the bank records, much less the isolated statement

referencing those records, were otherwise inadmissible. Preclusion of evidence is "rarely an appropriate sanction for a discovery violation" and should be used as a "last resort." *State v. Delgado*, 174 Ariz. 252, 257 (App. 1993). Only in an extremely rare situation would the accidental admission of an isolated reference to precluded evidence go the foundation of a case, take away a defendant's essential rights, or deny a fair trial. *See e.g.*, *State v. Strong*, 258 Ariz. 184, 211, ¶ 116 (2024) (inadmissible hearsay was not "of such a magnitude" to constitute fundamental error as it was not "the sole proof of an essential element of the state's case"). That is certainly not the case here, as the evidence was only precluded because of late disclosure. Thus, we cannot conclude—had the trial proceeded to guilty verdicts—that reversal on appeal would have been certain.

**¶39** The State argues the defendants conceded that a mistrial was manifestly necessary because, in arguing their prosecutorial misconduct claim on appeal, the defendants asserted that the third prong of *Pool* was "easily satisfied," meaning the prejudice could not "be cured by means short of mistrial." *See Pool*, 139 Ariz. at 109. We need not address the alleged contradiction in the defendants' arguments. The defendants' prosecutorial misconduct claims fail for other reasons as noted *supra* ¶¶ 14–18. And the defendants' position on the third *Pool* prong does not negate our manifest necessity analysis, *supra* ¶¶ 32–37.

**¶40** Neither defendant consented to a mistrial without prejudice and there was no manifest necessity to enter one. Therefore, the Double Jeopardy Clauses of the United States and Arizona Constitutions prohibit the defendants' retrial. *McLaughlin*, 150 Ariz. at 277–78.

**¶41** Although defense counsel here ultimately informed the court that the defense only sought dismissal with prejudice and not mistrial without prejudice, clarity on the defendants' position would have been helpful before the court issued its ruling. When confronting a defense mistrial motion that lacks clarity on the defendant's position as to a with or without prejudice dismissal, the best practice would be for the court to seek clarity before ruling and certainly before dismissing the jury. And defense counsel should likewise ensure a clear record on this point before the ruling and dismissal of the jury.

## CONCLUSION

**¶42** We accept special action jurisdiction, lift the stay imposed pending the outcome of this matter, and grant relief. We vacate the court's

order granting a mistrial without prejudice and direct the superior court to dismiss the defendants' charges with prejudice.

