NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JOHNNIE B. BUCKLES, *Appellant.*[1]

No. 1 CA-CR 25-0291

FILED 06-09-2026

Appeal from the Superior Court in Maricopa County
No.  CR2024-147631-001
The Honorable Aryeh D. Schwartz, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Anne Carmack
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Grahame McNevin
*Counsel for Appellant*

---

[1] On the Court's motion, the caption in this matter is amended to include the defendant's middle initial. This amended caption shall be used on any future filings.

---

**MEMORANDUM DECISION**

Presiding Judge Daniel J. Kiley delivered the decision of the Court, in which Judge D. Steven Williams and Judge Cynthia J. Bailey joined.

---

**K I L E Y**, Judge:

¶1 Johnnie Buckles appeals his conviction for attempt to commit armed robbery. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2 We view the facts and all reasonable inferences in the light most favorable to affirming Buckles's conviction. *State v. Haywood*, 257 Ariz. 472, 475, ¶ 2 (App. 2024) (citation omitted).

¶3 In the early morning hours one day in October 2024, the victim, a truck driver, pulled into a gas station to deliver fuel. After getting out of his truck, he was approached by someone he later described as a black man who was "about 40, 50 years old" wearing a gray shirt with black sleeves, jeans, and a white hat. The man pointed a gun at the victim and said, "Give me all you got." The victim tried to grab the gun and the two tussled briefly. The man then ran away, and the victim called the police.

¶4 Officers responded to the scene and obtained, from the victim, a description of the suspect and the gun. Officer Ryan relayed the description, but incorrectly stated that the suspect was wearing a black shirt.

¶5 Officers Danford and Brice canvassed the area near the scene. Seeing a "black male approximately in his 50s" wearing a gray shirt with black sleeves walking away from the location of the gas station, they detained him. The man identified himself as "Johnnie Buckles" and said that he was staying at a nearby E-Z 8 Motel. In response to Officer Danford's questioning, Buckles denied being at the gas station that night.

¶6 Because the shirt Buckles was wearing did not match the description provided by Officer Ryan, Officer Danford let him go.

¶7 Meanwhile, Officer Brice found a $CO_2$ gun matching the description given by the victim under some debris on the ground about 100 feet from where the officers stopped Buckles.

¶8　　　　Still at the scene, Officer Ryan reviewed video of the incident obtained from the dash-cam of the victim's truck and realized that he had provided an incorrect description of the shirt the suspect was wearing. He then relayed a corrected description.

¶9　　　　Realizing that Buckles matched the corrected description, Officer Danford notified others that he had made contact with the suspect and that he was staying at the E-Z 8 Motel. Officer Ryan showed the victim a photo lineup that included Buckles's picture; the victim identified Buckles as the man who had tried to rob him. Officers then arrested Buckles at the motel.

¶10　　　　Officers obtained Buckles's DNA via a buccal swab, which was then tested against DNA found on the $CO_2$ gun and found to be a match.[2]

¶11　　　　Buckles was charged with one count of attempt to commit armed robbery in violation of A.R.S. §§ 13-1001, -1904. He was tried in June 2025. At trial, the State presented the testimony of the victim, the investigating officers, and the forensic experts, and showed the jurors the dash-cam video from the victim's truck. Additionally, a copy of Buckles's identification card was admitted as an exhibit. The document, which reflected Buckles's date of birth, established that he was 57 years old at the time of the attempted robbery.

¶12　　　　In his testimony about the attempted robbery, the victim described the man who tried to rob him, but was not asked to make an in-court identification of the defendant.

¶13　　　　During his testimony, Officer Ryan was asked about the photo lineup. After the first couple of questions, the defense objected, saying, "[I]f the officer is going to testify that the victim identified Mr. Buckles in a photo lineup, . . . [t]hat's hearsay."

¶14　　　　In response, the State agreed not to ask Officer Ryan whether the victim identified Buckles, offering instead to ask whether the officer "showed [the victim] a photo lineup and as a result of that . . . [the police] went to the E-Z 8 Motel." Defense counsel objected, asserting that the State's

---

[2] As the criminalist later explained, the $CO_2$ gun had four DNA profiles on it, and Buckles was "260 quintillion times more likely . . . than random unrelated people" to have contributed one of the four.

proposal would necessarily "imply[] that the victim identified Mr. Buckles."

¶15 The court directed the State not to "elicit testimony from the officer about a positive identification" but permitted the State to ask "whether there was a lineup presented to the victim and then just jump to what [the officer] did next."

¶16 Officer Ryan then testified that he showed the victim a photo lineup. When asked what he did next, he responded, "So officers had located the individual that we used in the photo lineup." Defense counsel objected, and the court sustained the objection and ordered the jury to disregard the statement.

¶17 At the next trial break, the defense moved for a mistrial, arguing that Officer Ryan's statement violated the court's prior ruling. In response, the State argued, for the first time, that the victim's out-of-court identification of Buckles was admissible as non-hearsay under Arizona Rule of Evidence ("Rule") 801(d)(1)(C). The court denied the mistrial motion, saying "I . . . don't believe that [Officer Ryan's statement] was hearsay" and that, in any event, it had given a curative instruction directing the jurors to disregard the statement.

¶18 The State rested, and Buckles presented no evidence. After closing arguments, the jury deliberated and convicted Buckles. During the aggravation phase, the jury found that the State had not proven its allegation that the conviction was "dangerous" for sentencing enhancement purposes. *See* A.R.S. § 13-105(13).

¶19 Buckles was sentenced to 9 years' imprisonment. He timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21, 13-4031, and 13-4033(A).

## DISCUSSION

¶20 On appeal, Buckles argues that the superior court erred in denying his motion for a mistrial.

¶21 In determining whether a mistrial was warranted, "we look to (1) whether the jury heard what it should not hear, and (2) the probability that what it heard influenced it." *State v. Bolivar*, 250 Ariz. 213, 224, ¶ 34 (App. 2020) (citation modified).

¶22 Courts have long recognized that the denial of a motion for a mistrial is reviewed for abuse of discretion. *See, e.g., id.* at 220, ¶ 18. Buckles

insists, however, that we owe "less deference" to the superior court's ruling here because "the circumstances giving rise to the motion for mistrial were caused by the State." In support of his position, Buckles cites *State v. Dickinson*, 242 Ariz. 120 (App. 2017).

**¶23** In *Dickinson*, this Court held that the standard for determining whether a retrial is barred following the declaration of a mistrial without the defendant's consent depends in part on whether the mistrial was granted based on prosecutorial misconduct. *Id.* at 124-25, ¶¶ 17-18. An order granting a mistrial over the defendant's objection is reviewed with "the strictest scrutiny," the *Dickinson* court held, if "there is reason to believe that the prosecutor is using the superior court of the State to harass or to achieve a tactical advantage over the accused." *Id.* at ¶ 18 (citation modified). *Dickinson*'s holding thus applies only to appellate review of an order *granting* a mistrial. As the State correctly points out, our supreme court reviews the *denial* of a mistrial under the "abuse of discretion" standard. *See, e.g., State v. Strong*, 258 Ariz. 184, 215, ¶ 149 (2024). We likewise apply that standard here, and so will "defer to the trial judge's discretionary determination" to deny the mistrial motion "because the trial judge is in the best position to assess the impact of a witness's statements on the jury[.]" *State v. Dann*, 205 Ariz. 557, 570, ¶ 43 (2003).

**¶24** Buckles argues that the court erred in denying his motion for a mistrial after Officer Ryan testified that, after showing the victim the lineup, officers "located the individual we used in the photo lineup." The only "reasonable interpretation" of the officer's testimony, he asserts, "is that the victim identified [Buckles] from the lineup[.]" Because "the key issue in dispute was identity[,]" Buckles argues, "Officer Ryan's testimony that Mr. Buckles was the person in the lineup is highly prejudicial[.]"

**¶25** For several reasons, we reject Buckles's contention that the court erred in denying his mistrial motion.

**¶26** First, Officer Ryan did not repeat any statement that the victim made at the scene. Instead, the officer merely stated what the officers *did* – i.e., showed the victim a lineup that included Buckles's photo, then went looking for Buckles – rather than what the victim *said*. *Cf. State v. Chavez*, 225 Ariz. 442, 444, ¶ 8 (App. 2010) ("[W]ords or conduct not intended as assertions are not hearsay even when offered as evidence of the declarant's implicit belief of a fact.").

**¶27** Second, even if the officer's statement were construed as an assertion that the victim identified Buckles from the lineup, that statement would not be hearsay. Under Rule 801(d)(1)(C), an out-of-court statement

5

that "identifies a person as someone the declarant perceived earlier" is not hearsay so long as the declarant is "subject to cross-examination." Ariz. R. Evid. 801(d)(1)(C); *State v. Rojo-Valenzuela*, 235 Ariz. 617, 622, ¶ 17 (App. 2014). Because the victim testified at trial and was subject to cross-examination, Officer Ryan's statement was squarely within Rule 801(d)(1)(C). *See Rojo-Valenzuela*, 235 Ariz. at 622, ¶ 17; *see also State v. Romanosky*, 162 Ariz. 217, 225-26 (1989) (rejecting defendant's argument that because victim was not asked to make an in-court identification at trial, trial court erred by allowing officer to testify about victim's response to photo lineup).

**¶28** And assuming that the officer's statement constituted inadmissible hearsay, Buckles would be entitled to no relief because any error was clearly harmless. The one-sentence statement was very brief, the court instructed the jury to disregard it, and the testimony immediately moved on to another subject. *See State v. Goudeau*, 239 Ariz. 421, 446, ¶ 67 (2016) ("We presume jurors follow the court's instructions."). Moreover, there was overwhelming evidence of Buckles's guilt. Buckles was present near the crime scene, walking in the opposite direction. He matched the victim's physical description of the assailant. The jurors were shown the dash-cam video, so they could see the assailant for themselves. A CO2 gun that matched the description given by the victim was found near where Buckles was stopped, and DNA testing showed that Buckles had handled it. When balancing this evidence of Buckles's guilt against Officer Ryan's statement, we conclude that the statement, even if deemed inadmissible hearsay, had no effect on the verdict. *State v. Bocharski*, 218 Ariz. 476, 486, ¶ 38 (2008) ("Erroneously admitted evidence is harmless in a criminal case only when the reviewing court is satisfied beyond a reasonable doubt that the error did not impact the verdict." (citation modified)). The court did not err in denying Buckles's motion for a mistrial.

## CONCLUSION

**¶29** We affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**: JR